237 P.3d 378 (2010)
STATE of Washington, Respondent,
v.
Jeffrey L. VARS, Appellant.
No. 62673-6-I.
Court of Appeals of Washington, Division 1.
August 16, 2010.
*379 Lila J. Silverstein, Wash. App. Project, Sea., WA, for Appellant.
Randi J. Austell, King Co. Pros. Att., Sea., WA, for Respondent.
LEACH, A.C.J.
¶ 1 Jeffrey Vars appeals his convictions for two counts of indecent exposure with sexual motivation. He challenges the sufficiency of the evidence to establish that he exposed his genitalia, that he knew that this exposure would cause affront or alarm, and that he did so with sexual motivation. He also claims that one of his convictions violates double jeopardy because the two counts were based *380 on separate witness observations during a single extended period of exposure.
¶ 2 Because a witness need not observe the defendant's exposed genitalia and the State presented sufficient circumstantial evidence that Vars exposed himself with the knowledge that he was likely to cause reasonable affront or alarm, sufficient evidence supports one conviction for indecent exposure. A reasonable trier of fact could infer from the evidence that Vars's actions were sexually motivated. But because his behavior constituted only a single unit of prosecution, one of his two convictions violates double jeopardy. We affirm in part, reverse in part, and remand.

FACTS
¶ 3 At around 2:00 a.m., May 3, 2008, Jeffrey Vars drove to a Kirkland neighborhood, parked his car, removed his clothing, and began wandering naked through the streets. Approximately 30 minutes later, A.C. looked out the bedroom window on the second story of his condominium and saw a man, later identified as Vars, walking swiftly down the street. Vars was "completely nude" except for his shoes. A.C. felt ambivalent about the sighting, but since he considered the conduct inappropriate, he decided to call 911. A.C. saw Vars's buttocks but he did not see his genitalia.
¶ 4 Shortly after 5:00 a.m., D.B. was driving his car in the area when a man, later identified as Vars, ran across his headlights. D.B. could see that Vars was naked, though he appeared to be wearing a ski mask. Vars held his hands "up in sort of a menacing kind of posture." D.B. pulled into the post office parking lot and observed Vars crouching in the bushes along the road and watching him as D.B. turned his car around. D.B. called 911 and reported the sighting to the police. Like A.C., D.B. saw Vars's buttocks but not his genitalia.
¶ 5 Officer Spak responded to these two calls but was unable to locate anyone. About an hour after D.B.'s call, Officer Spak observed Vars, still nude, but holding a bundled garment in front of his genitalia. When the officer's patrol car became visible, Vars fled. Soon afterward, Officers Anderson and Davidson found Vars naked and squatting against a fence. As they approached, Vars again turned and ran into a nearby business lot. The officers pursued and eventually found him pulling on a pair of pants and wearing a black stocking cap, shoes, and a gray shirt. A large 10-inch rip ran along the left leg of his pants, allowing the officers to notice that he was not wearing any underwear. After the officers read Vars his Miranda[1] warnings, he denied walking nude through the neighborhood. He claimed to be in the area looking for a place to defecate. A car registered to Vars was found 15 blocks from where he was arrested.
¶ 6 The State charged Vars with two counts of indecent exposure, each committed with an aggravating factor, sexual motivation. Vars waived his right to a jury trial and stipulated to facts underlying eight prior convictions for indecent exposure, two of which were felonies. The State moved in limine to admit evidence of these prior convictions under ER 404(b). The court granted the motion as to three convictions for the purposes of showing common scheme or plan, knowledge, absence of mistake or accident, and sexual motivation.
¶ 7 The first of these prior convictions stemmed from an April 2000 incident when Vars was near Interstate 90 at 4:50 a.m. He was naked, except for his shoes and socks, and holding a jar of Vaseline. When the officer approached, Vars ran until the officer caught up with him. His car was parked at the end of a bike path, and his clothes were folded neatly underneath the driver's seat.
¶ 8 The second conviction resulted from a December 2000 incident where Vars was observed standing nude, with the exception of his shoes and socks, in a gas station parking lot in Renton just after 1:00 a.m. When the officer asked what he was doing, he replied that he was looking for a place to defecate.
¶ 9 The third conviction arose from an August 2004 incident. At 6:30 p.m. a witness saw Vars jump in and out of the roadside bushes while keeping a watch on the witness. *381 Vars was naked except for his shoes and socks. When the police arrived, Vars attempted to flee. When caught, he explained to the officer that he needed a place to defecate, took exit 31, and did not see any of the nearby restaurants or gas station.
¶ 10 The court found Vars guilty on both counts and that he had committed each count with sexual motivation. He received two concurrent 60-month sentences.
¶ 11 This appeal followed.

ANALYSIS
¶ 12 Vars first argues that the State failed to present sufficient evidence of an indecent exposure as none of the witnesses saw his naked genitalia. He also contends that since he was in a dark residential area in the very early hours of the morning, the State failed to prove that he knew that his conduct was likely to cause reasonable affront or alarm.
¶ 13 Whether the State must prove that a witness observed the defendant's naked genitalia as an element of the crime of indecent exposure is a matter of first impression for Washington courts. We review de novo this question of law.[2] The relevant statute, RCW 9A.88.010, provides,
(1) A person is guilty of indecent exposure if he or she intentionally makes any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm. The act of breastfeeding or expressing breast milk is not indecent exposure.
(2)(a) Except as provided in (b) and (c) of this subsection, indecent exposure is a misdemeanor.
(b) Indecent exposure is a gross misdemeanor on the first offense if the person exposes himself or herself to a person under the age of fourteen years.
(c) Indecent exposure is a class C felony if the person has previously been convicted under this section or of a sex offense as defined in RCW 9.94A.030.
¶ 14 This statute does not define or expressly incorporate any definition for the phrase "any open and obscene exposure of his or her person." "`When a statute fails to define a term, the term is presumed to have its common law meaning and the Legislature is presumed to know the prior judicial use of the term.'"[3] Since at least 1966, Washington common law has defined this phrase as "a lascivious exhibition of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others."[4] This conduct is the essence of the crime of indecent exposure.[5]
¶ 15 In State v. Eisenshank,[6] the court examined the elements of indecent exposure. It concluded that the essential elements of indecent exposure do not include any distressing emotion experienced by the person in whose presence the exposure occurred.[7]
The offensive exhibition in the presence of another ... [is] not necessarily an assault or a personal offense against the individual in whose presence the exhibition takes place. Creation of a sense of shame or other distressing emotion is not an essential element of the crime. It is sufficient if the acts are such that the common sense of society would regard the specific act performed *382 as indecent and improper.[[8]]
Thus, "the crime [of indecent exposure] is completed when the inappropriate exhibition takes place in the presence of another,"[9] without any consideration of that person's response.
¶ 16 If the subjective experience of the witness is immaterial to guilt, then so too is the witness's observation of the offender's genitalia. Simply because RCW 9A.88.010 requires an exposure of genitalia in the presence of another, it does not mean that the other person must observe the defendant's private parts for an indecent exposure to have occurred. As previously noted, the gravamen of the crime is an intentional and "obscene exposure" in the presence of another that offends society's sense of "instinctive modesty, human decency, and common propriety." So long as an obscene exposure takes place when another is present and the offender knew the exposure likely would cause reasonable alarm, the crime has been committed.
¶ 17 A California case, People v. Carbajal,[10] addressed this issue under a similarly worded indecent exposure statute and reached the same result. There, a witness had twice observed the defendant enter the restaurant and, after eating, place his hand inside his pants and move his hand up and down.[11] On the second occasion, the witness watched the defendant wipe his hand with a napkin and place a newspaper over a puddle of what appeared to be semen.[12] The court affirmed the conviction for indecent exposure despite the absence of any actual observation of naked genitalia because "there is no concomitant requirement that such person actually must have seen the defendant's genitals."[13] Rather, the court concluded, indecent exposure may be proved by circumstantial evidence sufficient to support the conclusion that an exposure occurred.[14]
¶ 18 Here, the issue is whether sufficient circumstantial evidence exists to prove that Vars intentionally exposed himself in the presence of another and in a manner likely to cause affront or alarm.[15] Sufficient evidence supports a conviction when, after viewing all the evidence, a rational trier of fact could find the essential elements of the crime proved beyond a reasonable doubt.[16] This test admits the truth of the State's evidence.[17] All reasonable inferences are drawn in the prosecution's favor and interpreted most strongly against the defendant.[18]
¶ 19 The trial court in this case found that on May 3, 2008, at 2:37 a.m., A.C. "observed the defendant walking naked down the street, wearing some form of shoes and carrying something in his hands .... and called 911 to report the incident to the police." *383 Approximately three hours later, D.B. observed the defendant cross the street in front of his car. "The defendant was naked, wearing a black ski mask over his head and his arms were in the air. Once the defendant cleared the street, he crouched down in the bushes along the road and observed D.B. turn his car around." An hour later, Officer Spak observed the defendant "walking ... nude, partially covering his genitals with a garment." Officers Anderson and Davidson also observed the defendant naked on the street squatting against a fence. When they approached, Vars ran into the lot of a nearby business. When the officers caught Vars, he was pulling on his pants, which had a 10-inch tear along the thigh allowing the officers to notice that he was not wearing underwear.
¶ 20 These unchallenged findings are verities on appeal.[19] And since they indicate that Vars was "nude" and was seen walking "naked" through a residential neighborhood with his arms in the air, the record contains sufficient circumstantial evidence for a rational, objective trier of fact to conclude that Vars exposed his genitalia in the presence of another.
¶ 21 The record also contains sufficient evidence to conclude that Vars knew that this exposure was likely to cause reasonable affront or alarm. Over the course of a three hour period, Vars intentionally removed his clothing and walked 15 blocks through a residential neighborhood in the very early hours on a Saturday morning. When he knew he was being watched, he furtively crouched in roadside bushes, and when officers arrived, he attempted to flee the scene of the crime. He did all this with a history of eight prior convictions for indecent exposure, three of which were admitted in this case under ER 404(b) to prove that he knew his conduct was likely to cause alarm.[20] From the foregoing evidence, we conclude that a rational trier of fact could have found each element of indecent exposure proved beyond a reasonable doubt.
¶ 22 Turning to Vars's second argument, he claims that it was a manifest abuse of discretion for the trial court to admit evidence of his prior indecent exposure offenses under ER 404(b). He also alleges that, even if the prior convictions were properly admitted, they were insufficient to support the inference that his current offense was committed with sexual motivation.
¶ 23 Under the Sentencing Reform Act of 1981(SRA), a finding of sexual motivation is an aggravating circumstance that can support an exceptional sentence.[21] When the State charges a nonsex offense crime and "sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify a finding of sexual motivation by a reasonable and objective fact finder," RCW 9.94A.835(1) requires the filing of a special allegation of sexual motivation. "`Sexual motivation' means that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification."[22] In sum, the State must prove beyond a reasonable doubt that the defendant committed the crime for the purposes of sexual gratification. It must do so with evidence of identifiable conduct by the defendant while committing the offense.[23]
¶ 24 In this case, the trial court based its finding of sexual motivation on the three prior convictions for indecent exposure admitted under ER 404(b) to establish motive. Thus, we must first decide whether the trial court properly admitted evidence of Vars's prior convictions and, if so, whether this evidence supports its finding that Vars's conduct was sexually motivated.
¶ 25 "The admission of evidence lies largely within the sound discretion of the *384 trial court."[24] We will not disturb a trial court's determination to allow certain evidence absent a manifest abuse of discretion.[25] A trial court abuses its discretion when it bases its decision on untenable grounds or reasons.[26]
¶ 26 ER 404(b) states:
Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
To admit evidence of prior bad acts for any of the authorized purposes, the trial court must (1) find by a preponderance of the evidence that misconduct occurred, (2) determine that the prior conviction is relevant to a material issue, (3) state on the record the purpose for which the evidence is admitted, and (4) determine that the danger of undue prejudice is outweighed by the probative value of the evidence.[27]
¶ 27 Vars's three prior convictions satisfy these four factors. At trial, Vars stipulated to the facts of each of his eight prior offenses. The trial court determined that the prosecution had proved each prior conviction by a preponderance of the evidence and that evidence of these convictions would be admitted to show common scheme or plan, knowledge, to rebut an assertion of mistake or accident, and to establish sexual motivation. The court stated on the record that the probative value of this evidence was high.
The defendant's prior exposure behaviors assist in viewing his behaviors surrounding the exposure incidents with context and establish that the defendant had a particular pattern he used when he exposed himself.... The defendant's prior exposures also provide the motivation for his conduct when considering it has gone on for more than two decades.
But, recognizing their potential prejudicial impact, the court compromised by admitting evidence of only three of the eight prior convictions. Accordingly, we cannot say that the trial court abused its discretion in admitting these convictions.
¶ 28 In the context of the facts of this case, these prior convictions demonstrate common elements in Vars's offending behavior. He exposes himself in urban settings and is often apprehended at some distance from his parked car. When he is observed by civilians, he attempts to hide while continuing to watch his victim. But when police arrive, he attempts to flee the scene. And, when apprehended, he claims to be looking for a place to defecate even if suitable restroom facilities are nearby.
¶ 29 These common elements permit the reasonable inference that the same motivation underlies his offending behavior in each instance.[28] As mentioned, a sufficiency of the evidence challenge admits the truth of the State's evidence while allowing all reasonable inferences to be drawn in the State's favor. The facts of Vars's three prior convictions demonstrate sexual motivation. We therefore conclude that an objective trier of fact could logically infer from this record that Vars's indecent exposure on this occasion was sexually motivated as well.
¶ 30 Vars cites State v. Halstien[29] and State v. Halgren[30] for his argument that prior convictions alone cannot support a finding of sexual motivation. These cases do not support his claim.
*385 ¶ 31 In Halstien, the defendant was convicted of committing burglary with sexual motivation. On appeal, he challenged on vagueness grounds the constitutionality of the juvenile sexual motivation statute, which is nearly identical to the adult statute. Our Supreme Court disagreed,
"Inherent in this subsection [RCW 13.40.135(2)] is the requirement that the finding of sexual motivation be based on some conduct forming part of the body of the underlying felony. The statute does not criminalize sexual motivation. Rather, the statute makes sexual motivation manifested by the defendant's conduct in the course of committing a felony an aggravating factor in sentencing."[[31]]
Notably, nothing in Halstien prohibits a consideration of prior acts to show that a desire for sexual gratification motivated the current crime. In fact, the court expressly stated that evidence of prior contacts between the defendant and the victim was relevant and admissible under ER 404(b) to prove motive.[32] Our holding here is consistent with Halstien as Vars's prior convictions were admitted to prove that his recent exposure fit within a sexually motivated pattern of behavior.
¶ 32 Vars also cites to a statement in Halgren that the "sexual nature of the current offense is the relevant inquiry" for determining sexual motivation, not prior similar history and lack of amenability to treatment.[33] But Halgren does not prohibit a consideration of previous convictions to prove an allegation of sexual motivation for two reasons.
¶ 33 First, Halgren addressed a very different question than that presented herewhether a trial court may apply the nonstatutory aggravating factor of future dangerousness to support an exceptional sentence when the defendant is charged with a nonsex offense crime and the State fails to allege sexual motivation.[34] The court analyzed this question in the context of the legislative intent of the SRA. Thus, the cited dicta in Halgren provide no support for Vars's argument.
¶ 34 Additionally, in this dicta the Halgren court addressed the mistaken assumption that a finding of sexual motivation, like a finding of future dangerousness, required evidence of similar criminal history and lack of amenability to treatment.[35] The court explained that neither is generally relevant to a sexual motivation determination,[36] which looks to the underlying conduct of the current crime. But the court did not hold that criminal history is never relevant to this determination.
¶ 35 Prior misconduct, both criminal and noncriminal, may be admissible to prove motive under ER 404(b).[37] Accordingly, our analysis does not focus on Vars's criminal history per se. It focuses on the common elements of Vars's misconduct, which may or may not be evidenced by criminal history, and whether that evidence is relevant to prove motive under the facts of this case. We reject Vars's claim and conclude that evidence of his prior misconduct is admissible to prove sexual motivation where, as here, his current actions conform to a persistent pattern of prior behavior. From the admitted facts for these prior convictions, a trier of fact could reasonably infer sexual motivation for the conduct in each instance.
¶ 36 Lastly, Vars claims that his convictions for two counts of indecent exposure violate double jeopardy because his conduct constituted one continuing offense. The State concedes that the appropriate unit of prosecution is the exposure, not the number of witnesses to it, but argues that under these facts, separate exposures occurred.
*386 ¶ 37 The federal and state constitutional prohibitions against double jeopardy are coextensive and protect an individual from being punished twice for the same offense.[38] When a defendant is convicted for violating one statute multiple times, each conviction must be for a separate "unit of prosecution."[39] The unit of prosecution may be a single act or a continuing course of conduct.[40]
¶ 38 We must decide what act or course of conduct the legislature defined as the punishable act for indecent exposure. To do so, we first analyze the applicable statute using traditional tools of statutory construction,[41] including an analysis of the statute's plain language and legislative history.[42] Unless the legislature has clearly and unambiguously defined the unit of prosecution, we apply the rule of lenity to avoid "`turn[ing] a single transaction into multiple offenses.'"[43] Next, we conduct a factual analysis to determine whether multiple violations occurred.[44] This step is necessary "because even where the legislature had expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one `unit of prosecution' is present."[45]
¶ 39 The State contends that a defendant commits two units of prosecution for indecent exposure if he removes his clothes once but is observed twice in separate locations at significantly separate times. Washington courts have addressed the circumstance of multiple witnesses to a single exposure,[46] but we have found no Washington case that has addressed the circumstance of consecutive victims of a continuing exposure.
¶ 40 RCW 9A.88.010(1) criminalizes "any open and obscene exposure of his or her person ... [with the] know[ledge] that such conduct is likely to cause reasonable affront or alarm." As Eisenshank observed, this statute contains no indication that an individual may be punished more than once depending on the number of observers.[47] Though Eisenshank addressed multiple witnesses to one exposure, its logic applies to this case. Eisenshank characterized the essence of this crime as an offensive exhibition in the presence of another, with one crime being committed regardless of the number of persons present, because "the crime [of indecent exposure] is completed when the inappropriate exhibition takes place in the presence of another."[48] Under this logic, we discern no clear and unambiguous distinction between one exposure in the presence of multiple persons simultaneously and multiple persons sequentially.
¶ 41 Recent Supreme Court case law supports our conclusion. In State v. Hall[49] a defendant making 1,200 phone calls from jail to induce a witness to testify falsely committed only a single crime under RCW 9A.72.120, the witness tampering statute.[50] That statute provides that a person is guilty of witness tampering "if he or she attempts to induce a witness ... to ... [t]estify falsely or, without right or privilege to do so, to *387 withhold any testimony."[51] The court stated that the statute turns on the defendant's attempt to interfere with "`a witness' in `any official proceeding.'"[52] Thus, the crime of witness tampering is completed as soon as the defendant attempts to induce that witness not to testify or to testify falsely, "whether it takes 30 seconds, 30 minutes, or days."[53]
¶ 42 Using this analytic framework, the indecent exposure statute focuses on the defendant's improper exhibition of his or her genitalia. This crime is complete when an inappropriate exhibition takes place in the presence of others, whether the exposure lasts for mere moments or hours and without regard to the number of simultaneous or consecutive observers.
¶ 43 Next, we must determine whether, under the facts of this case, multiple units of prosecution occurred, as the State contends, or whether a single crime was committed, as Vars alleges. Again, Hall is instructive. There, the court looked to the statutory elements of witness tampering and characterized the defendant's behavior as "continuous and ongoing, aimed at the same person, in an attempt to tamper with her testimony at a single proceeding."[54] At the same time, the court was careful to indicate that under different facts, for example, "if he had been stopped by the State briefly and found a way to resume his witness tampering campaign" or his "attempts to induce [were] interrupted by a substantial period of time, employ[ed] new and different methods of communications, [or] involve[d] intermediaries,"[55] multiple units of prosecution may lie.
¶ 44 Here, the evidence shows that Vars undressed once and in the presence of others walked naked through a Kirkland neighborhood for hours. The record contains no evidence that Vars employed a new or different method of exposure, temporarily stopped exposing himself, or dressed and disrobed again between the witness observations. And since the number of witnesses is immaterial where, as here, an ongoing exposure occurs, Vars committed a single punishable act under RCW 9A.88.010(1).

CONCLUSION
¶ 45 Sufficient evidence in the record supports a conviction for a single continuing act of indecent exposure with sexual motivation. Accordingly, Vars's conviction for two counts of indecent exposure violated double jeopardy. One count of indecent exposure is reversed and the case is remanded for resentencing on the remaining count.
WE CONCUR: COX and BECKER, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] State v. Smith, 155 Wash.2d 496, 501, 120 P.3d 559 (2005) (questions of statutory construction are reviewed de novo).
[3] State v. Torres, 151 Wash.App. 378, 384-85, 212 P.3d 573 (2009) (quoting State v. McKinley, 84 Wash.App. 677, 684, 929 P.2d 1145 (1997)).
[4] State v. Galbreath, 69 Wash.2d 664, 668, 419 P.2d 800 (1966).
[5] State v. Eisenshank, 10 Wash.App. 921, 924, 521 P.2d 239 (1974)
[6] 10 Wash.App. 921, 521 P.2d 239 (1974). Eisenshank was charged under former RCW 9.79.080(2) and RCW 9.79.120. The basis for these crimes was indecent exposure. The "public indecency" statute, former RCW 9A.88.010, was renamed "indecent exposure" in a 1987 amendment. See Laws of 1987, ch. 277, § 1 (1987). Accordingly, Eisenshank is pertinent to our decision in this case.
[7] Eisenshank, 10 Wash.App. at 924, 521 P.2d 239.
[8] Eisenshank, 10 Wash.App. at 924, 521 P.2d 239 (citation omitted).
[9] Eisenshank, 10 Wash.App. at 924, 521 P.2d 239.
[10] 114 Cal.App.4th 978, 986, 8 Cal.Rptr.3d 206 (2003).
[11] Carbajal, 114 Cal.App.4th at 981, 8 Cal. Rptr.3d 206.
[12] Carbajal, 114 Cal.App.4th at 981, 8 Cal. Rptr.3d 206.
[13] Carbajal, 114 Cal.App.4th at 986, 8 Cal. Rptr.3d 206.
[14] Carbajal, 114 Cal.App.4th at 986, 8 Cal. Rptr.3d 206.
[15] The cases Vars cites do not alter our analysis. In Duvallon v. District of Columbia, 515 A.2d 724 (D.C.1986), the issue was whether a woman who exposed her bare buttocks while wearing a cardboard sign over her naked body as a form of political protest committed indecent exposure under D.C. Code. Duvallon, 515 A.2d at 724-25. Notably, the defendant never exposed her reproductive organs. And in People v. Massicot, 97 Cal.App.4th 920, 118 Cal.Rptr.2d 705 (2002), the court determined that a man who repeatedly flashed a woman while wearing a pair of woman's underwear did not commit indecent exposure. Massicot, 97 Cal.App.4th at 932, 118 Cal. Rptr.2d 705. Again, the defendant never exposed his reproductive organs. Because neither case involves an exposure of naked genitalia, these courts did not address whether a witness observation of naked genitalia is a necessary element of the crime.
[16] State v. Mines, 163 Wash.2d 387, 391, 179 P.3d 835 (2008).
[17] State v. Gohl, 109 Wash.App. 817, 823, 37 P.3d 293 (2001).
[18] State v. Hosier, 157 Wash.2d 1, 8, 133 P.3d 936 (2006).
[19] State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
[20] Vars does not challenge the admission of these convictions for this purpose.
[21] RCW 9.94A.535(3)(f).
[22] RCW 9.94A.030(43).
[23] State v. Halstien, 122 Wash.2d 109, 126, 857 P.2d 270 (1993).
[24] Halstien, 122 Wash.2d at 126, 857 P.2d 270.
[25] Halstien, 122 Wash.2d at 126, 857 P.2d 270.
[26] State v. Neal, 144 Wash.2d 600, 609, 30 P.3d 1255 (2001).
[27] State v. Trickler, 106 Wash.App. 727, 732, 25 P.3d 445 (2001) (citing State v. Brown, 132 Wash.2d 529, 571, 940 P.2d 546 (1997)).
[28] See, e.g., State v. Burkins, 94 Wash.App. 677, 688, 973 P.2d 15 (1999) (holding that in first degree murder trial, it was not error to admit evidence of defendant's sexual demands upon another woman under circumstances similar to those leading up to the murder to show that defendant's motive was the victim's refusal to consent to his sexual demands).
[29] 122 Wash.2d 109, 857 P.2d 270 (1993).
[30] 137 Wash.2d 340, 971 P.2d 512 (1999).
[31] Halstien, 122 Wash.2d at 120, 857 P.2d 270 (quoting State v. Halstien, 65 Wash.App. 845, 853, 829 P.2d 1145 (1992)).
[32] Halstien, 122 Wash.2d at 126, 857 P.2d 270.
[33] Halgren, 137 Wash.2d at 351, 971 P.2d 512.
[34] Halgren, 137 Wash.2d at 346, 971 P.2d 512.
[35] See State v. Strauss, 119 Wash.2d 401, 414, 832 P.2d 78 (1992).
[36] Halgren, 137 Wash.2d at 351, 971 P.2d 512.
[37] See Halstien, 122 Wash.2d at 126, 857 P.2d 270.
[38] U.S. CONST. amend. V; WASH. CONST. art. I, § 9; State v. Sutherby, 165 Wash.2d 870, 878, 204 P.3d 916 (2009).
[39] State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998).
[40] Adel, 136 Wash.2d at 634, 965 P.2d 1072; see also State v. Tvedt, 153 Wash.2d 705, 710, 107 P.3d 728 (2005) ("The unit of prosecution for a crime may be an act or a course of conduct.").
[41] Adel, 136 Wash.2d at 635, 965 P.2d 1072; Sutherby, 165 Wash.2d at 878, 204 P.3d 916.
[42] State v. Hall, 168 Wash.2d 726, 730, 230 P.3d 1048 (2010).
[43] Hall, 168 Wash.2d at 736, 230 P.3d 1048 (quoting State v. Jensen, 164 Wash.2d 943, 949, 195 P.3d 512 (2008)).
[44] State v. Varnell, 162 Wash.2d 165, 168, 170 P.3d 24 (2007).
[45] Varnell, 162 Wash.2d at 168, 170 P.3d 24.
[46] See Eisenshank, 10 Wash.App. at 922, 924, 521 P.2d 239.
[47] Eisenshank, 10 Wash.App. at 923-24, 521 P.2d 239.
[48] Eisenshank, 10 Wash.App. at 924, 521 P.2d 239.
[49] 168 Wash.2d 726, 230 P.3d 1048 (2010).
[50] Hall, 168 Wash.2d at 729, 731, 230 P.3d 1048.
[51] RCW 9A.72.120(1)(a).
[52] Hall, 168 Wash.2d at 731, 230 P.3d 1048.
[53] Hall, 168 Wash.2d at 731, 230 P.3d 1048.
[54] Hall, 168 Wash.2d at 736, 230 P.3d 1048.
[55] Hall, 168 Wash.2d at 737-38, 230 P.3d 1048.