IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30717-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES ROLFE MOE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — The relationship between an older brother and younger brother is a special relationship, one of solidarity, trust, and nurture. Sometimes.

The trial court, after a bench trial, found Charles Moe guilty of second degree assault upon and indecent exposure towards his younger brother during two incidents in the summer of 2011. In this appeal, Moe asserts the trial court committed three errors. First, Moe challenges his second degree assault conviction because of an alibi defense. Second, Moe contends that—and the State concedes—insufficient evidence supported his indecent exposure conviction. Third, Moe contends that—and again the State concedes—the trial court improperly imposed $25 in attorney fees for recoupment. We affirm Moe's conviction for second degree assault and accept the State's concessions.

## FACTS

In December 2011, A.M.[1] disclosed to his parents two incidents from the past summer involving his older brother, Charles Rolfe Moe. A.M. was 13-years-old and Moe 17-years-old at the time of the episodes. A.M. is a special needs child with a low I.Q. First, when the brothers were alone in the family's laundry room, Moe showed A.M. their father's sheathed hunting knife and stated that he wanted to cut off A.M.'s male appurtenance. Moe told A.M. to drop his pants. Second, while A.M., along with other children, swam in the family pool, Moe pulled down his shorts to expose his buttocks.

The State charged Moe with assault in the second degree under RCW 9A.36.021(1)(c) and indecent exposure under RCW 9A.88.010(1) and (2)(b)—alleging that both occurred "[o]n or about or between June 1, 2011 through August 1, 2011." Clerk's Papers (CP) at 18. During trial, A.M. testified that the knife threat occurred in July 2011. He stated:

> Q: Okay. And when did this take place?
> A: The day?
> Q: Yeah.
> A: When, uhm –
> Q: Well, if you can't remember the exact date, give us a—like maybe a month?
> A: I don't know the date, it was a little close to—it was sometime in the summer.
> Q: Okay. Was that this past summer?
> A: Yeah, this past summer.

---

[1] Pursuant to the General Order of this court dated June 15, 2012, the victim in this case is referred to using only his initials.

2

Q: So 2011, okay. So it was sometime during the summer.
   Do you remember if it was before or after the 4th of July?
A: A little bit after the 4th of July.
Q: Okay, so sometime in the month of July 2011, this incident
   in the laundry room at your house took place?
A: Yeah.

1 Report of Proceedings (RP) at 90-91.[2]

Moe was incarcerated from June 30 to August 8, 2011. Since he was incarcerated during the entire month of July, Moe claimed his incarceration provided him a complete alibi for the assault charge. Disregarding A.M.'s more specific testimony, the trial court found that "[t]he hunting knife incident occurred sometime during the summer of 2011 when [the parents] left [the family residence] to go to the store." CP at 21. The trial court acknowledged that this finding disregards part of A.M.'s testimony, "So I believe that I can distinguish and find his—his recitation of what occurred, because he painted it in great detail, I thought, is very credible. I'm much less concerned about when he says it happened." 2 RP at 21-22.

The court sentenced Charles Moe, for both offenses, to 25 weeks confinement. The court also ordered Moe to pay $100 crime victims penalty assessment and $25 in attorney fees for recoupment.

---

[2] There are two verbatim reports of proceedings for this case. For ease, "1 RP" refers to the proceedings on March 9 and 12, 2012 and "2 RP" refers to the proceeding on April 24 and May 3, 2012.

SECOND DEGREE ASSAULT

Moe contends that the trial court erred by finding the hunting knife incident occurred sometime during the summer of 2011. He argues the State's own evidence—A.M.'s testimony that the assault occurred in July 2011—precludes the more general finding that it occurred sometime that summer. In turn, Moe desires the conviction to be overturned since he could not possibly have threatened his brother at home during a time he sat in state confinement. The arguments raise two distinct questions. First, may the trial court, after a bench trial, find that the crime occurred at some indefinite time during a three-month period? Conversely, must the trial court identify a narrower range of time during which the crime occurred? Second, may the trial court's finding as to the date of the crime be inconsistent with the victim's testimony?

Washington courts have wrestled with problems resulting from a young or vulnerable victim being unable to specify a date upon which the crime was committed. Usually the problem arises during a sex crime prosecution. Washington courts do not wish a child's inability to recall the time of sexual contact with the defendant to permit the defendant to escape prosecution, whether there are multiple events or a single event. *State v. Cozza*, 71 Wn. App. 252, 257, 858 P.2d 270 (1993). When young children are victims, the court is flexible in the requirement regarding specificity as to time and place of the crime or crimes. *Id.* at 259. The defendant may use the child's inability to recall dates as an attack upon the credibility of the victim, but not as a sword to escape trial. *Id.*

4

Washington courts have affirmed convictions with various lengths for the window of time for the crime. In *State v. Jordan*, 6 Wn.2d 719, 108 P.2d 657 (1940), the jury was allowed to determine the sexual assault occurred at any time in a two-month period. In *State v. Bailey*, 52 Wn. App. 42, 757 P.2d 541 (1988), the victim and her mother could only place the assault within a 30-day period. In *State v. Carver*, 37 Wn. App. 122, 678 P.2d 842 (1984), the victim recalled that the rape occurred sometime during "the summer school vacation." Finally, in *Cozza*, the court approved a three-year time span. 71 Wn. App. at 260. Based upon the foregoing, the trial court did not err in finding that the assault on A.M. occurred during the summer of 2011.

Moe relies on the rule stated in *State v. Brown*:

> When the complaining witness has fixed *the exact time* when the act charged was committed, and the defense is an alibi, the commission of the crime on the exact date so fixed is the controlling issue, and the jury should be instructed that they must find the act to have been committed at that time.

35 Wn.2d 379, 383, 213 P.2d 305 (1949) (emphasis added) (internal quotation marks omitted) (quoting *State v. Severns*, 13 Wn.2d 542, 560, 125 P.2d 659 (1942)) (emphasis added). This rule is of no help to Moe, however, since his brother could not testify to an exact date or time for the assault in the laundry room.

We also find no error in the trial court discounting A.M.'s testimony that the assault occurred after July 4, 2011. The case we find most on point is *Stevenson v. State*, 164 Ind. App. 199, 327 N.E.2d 621 (1975). There, the State charged Stevenson with

5

burglary. The victim's testimony established the date of the burglary to be May 11. The State's principal witness, a police officer, testified he went to the scene and gathered the defendant's fingerprints from the home window on May 10. Stevenson argued that the court must accept the officer's testimony as true and therefore cannot convict him since the burglary occurred the day after his prints were found. The reviewing court affirmed the conviction. The *Stevenson* trial court was free to reason that the officer made an error in his testimony. A similar error in A.M.'s testimony occurred here. To obtain the truth in the case at bar, the trial court was free to ignore the testimony of A.M. as to the date of the crime.

In a closely related argument, Charles Moe also contends the trial court wrongly deprived him of his alibi defense by finding that he assaulted A.M. on a date outside that fixed by A.M.'s testimony. A criminal defendant has the right to present his or her defense, guaranteed by the Sixth Amendment to the federal constitution, as well as article I, section 22 of the Washington Constitution. *Wash. v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). But "the State need not, by election, fix a precise time for the commission of an alleged crime, when it cannot intelligently do so." *State v. Pitts*, 62 Wn.2d 294, 299, 382 P.2d 508 (1963). More specifically, "a defendant has no due process right to a reasonable opportunity to raise an alibi defense." *Cozza*, 71 Wn. App. at 259.

The information charged Moe with having committed second degree assault "[o]n or [around June 1 to] August 1, 2011." CP at 18. Therefore, Moe was on notice that the State might not fix the date of the assault on a precise date. A.M. was a young, vulnerable victim and his inability to provide an accurate date should be of no surprise to Moe. Moe had frequent contact with his younger brother and thus many opportunities to threaten him. He does not argue that the assault could not have occurred during June 2011.

## INDECENT EXPOSURE

Moe contends, and the State concedes, the trial court erred when it ruled that exposing one's bare buttocks, without exposing one's genitalia, constitutes indecent exposure. We agree.

Whether the State must prove that Moe exposed his genitalia as an element of the crime of indecent exposure is a question of law, which this court reviews de novo. *State v. Vars*, 157 Wn. App. 482, 489, 237 P.3d 378 (2010). Under RCW 9A.88.010(1), "[a] person is guilty of indecent exposure if he or she intentionally makes *any open and obscene exposure of his or her person* or the person of another knowing that such conduct is likely to cause reasonable affront or alarm." (Emphasis added.) As Division One of this court noted in *Vars*:

> This statute does not define or expressly incorporate any
> definition for the phrase "any open and obscene exposure of his
> or her person." When a statute fails to define a term, the term

7

> is presumed to have its common law meaning and the
> Legislature is presumed to know the prior judicial use of the
> term. Since at least 1966, Washington common law has defined
> this phrase as "a lascivious exhibition of those *private parts* of
> the person which instinctive modesty, human decency, or
> common propriety require shall be customarily kept covered in
> the presence of others."

157 Wn. App. at 489-90 (emphasis added) (some internal quotations and citations omitted) (quoting *State v. Galbreath*, 69 Wn.2d 664, 668, 419 P.2d 800 (1966)). In turn, "private parts" means genitalia. *Vars*, 157 Wn. App. at 491 n.15 (acknowledging that "RCW 9A.88.010 requires an exposure of genitalia in the presence of another"). The term "private parts" is "generally understood as a commonplace designation of the genital procreative organs." *State v. Dennison*, 72 Wn.2d 842, 846, 435 P.2d 526 (1967).

Charles Moe dropped his shorts exposing his bare bottom to young children in the swimming pool. A.M. testified that "[w]e didn't see his private part but we saw his other part on the backside." 1 RP at 94. There is no evidence that Moe exposed his genitalia. Because exposing genitalia is an element of the crime, there is insufficient evidence to support Moe's conviction for indecent exposure. We therefore reverse Moe's conviction for indecent exposure.

## LEGAL FINANCIAL OBLIGATIONS (LFOs)

A trial court may impose costs on a convicted juvenile under RCW 13.40.145, which states:

> If, after hearing, the court finds the juvenile, parent, or other

8

> legally obligated person able to pay part or all of the attorney's
> fees and costs incurred on appeal, the court may enter such order or
> decree as is equitable and may enforce the order or decree by
> execution, or in any way in which a court of equity may enforce its
> decrees.

RCW 13.40.145 requires the court to inquire into the defendant's, or defendant's parents' ability to pay prior to imposing costs. Moe contends the trial court erred when it ordered him to pay costs of $25 in attorney fees for recoupment without inquiry into his ability to pay. The State concedes that the trial court ordered Moe to pay costs without inquiring into his ability to pay. Nonetheless, we conclude it is premature for this court to address the assigned error for two reasons.

First, challenges to LFOs are not properly before this court until the State seeks to enforce them. *State v. Hathaway*, 161 Wn. App. 634, 651, 251 P.3d 253 (2011); *State v. Smits*, 152 Wn. App. 514, 524, 216 P.3d 1097 (2009). Because a person is not an "aggrieved party" under RAP 3.1 "until the State seeks to enforce the award of costs and it is determined that [the defendant] has the ability to pay," appellate review is inappropriate. *State v. Mahone*, 98 Wn. App. 342, 349, 989 P.2d 583 (1999); *see also State v. Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997). In *State v. Crook*, 146 Wn. App. 24, 27-28, 189 P.3d 811 (2008), this division held that "[m]andatory Department of Corrections deductions from inmate wages for repayment of legal financial obligations are not collection actions by the State requiring inquiry into a defendant's financial

No. 30717-4-III
*State v. Moe*

status." Thus, "[i]nquiry into the defendant's ability to pay is appropriate only when the State enforces collection under the judgment or imposes sanctions for nonpayment." *Crook*, 146 Wn. App. at 27.

Second, when and if the State seeks to collect, Moe may petition the court for remission under RCW 10.01.160(4), which states:

> A defendant who has been ordered to pay costs and who is not in contumacious default in the payment thereof may at any time petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170.

The denial or granting of *that motion* would warrant appellate review.

## CONCLUSION

We affirm Charles Moe's conviction for second degree assault; reverse his conviction for indecent exposure; and remand for sentencing consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the

10

No. 30717-4-III
*State v. Moe*


Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

WE CONCUR:

Fearing, J.

Korsmo, C.J.

Siddoway, J.

11