FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 DEC -3 AM 9: 23

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

JEFFREY DAVID CONAWAY,

Appellant.

No. 77107-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 3, 2018

CHUN, J. — Jeffrey Conaway appeals his conviction for felony indecent exposure with sexual motivation. The trial court admitted evidence of a prior incident of indecent exposure, from approximately 10 years before, reasoning, "it would certainly be relevant to . . . intent if he had done the same thing on a previous occasion." The court stated the evidence was relevant to whether Conaway's alleged conduct "was something he intentionally did and had *an impulse and desire* to do." (Emphasis added.) This evidence constitutes improper, propensity evidence. The erroneous admission was not harmless. As a result, we reverse and remand for a new trial.

I.
BACKGROUND

On the afternoon of June 27, 2016, 17-year-old C.M. sat in a chair in her driveway, overseeing a family garage sale. Conaway arrived and looked through a pile of clothing on a table. Conaway found some pants and asked C.M. if he could try them on in her house. C.M. declined, so Conaway tried on the pants in

his truck. When he returned, Conaway informed C.M. the pants did not fit. Conaway remained at the sale, moving and folding clothes on the table.

When he reached the bottom of the pile of clothes, C.M. noticed Conaway's penis resting on the table in front of her. Conaway was wearing loose, unzipped jeans.

C.M. testified she froze, became extremely uncomfortable, and stopped making conversation with Conaway at that time. Conaway continued to make small talk. At one point, Conaway went around to C.M.'s side of the table to show her a photograph of his boat. When he came around the table, C.M. could no longer see Conaway's exposed penis because of his baggy shirt. She assumed Conaway remained exposed because she had not seen him put his penis away before coming around the table. C.M. felt very uncomfortable and scared.

Soon after, Conaway left. C.M. went inside her house and called her mother, who then called the police. C.M. gave a statement to the police and described Conaway and his vehicle.

The next day, C.M. went to Jet Java, the coffee shop she had frequented that summer. She noticed Conaway in line behind her. C.M. left the coffee shop and parked nearby to call her mother.

Oak Harbor City Police Officer Michael Brown arrived at Jet Java and contacted Conaway. Conaway admitted going to a garage sale the prior day and speaking with a young female. Officer Brown asked Conaway if he had exposed himself to the girl. Conaway said, "No," but stuttered and appeared hesitant.

2

Officer Brown asked Conaway if he had a history of exposure. Conaway admitted to a prior incident that was no longer on his record. Officer Brown arrested Conaway.

The State charged Conaway by information with one count of felony indecent exposure due to a prior conviction. The State subsequently amended the information to include a charge for the gross misdemeanor of communication with a minor for immoral purposes.

Leading up to trial, the State attempted to locate information about Conaway's prior conviction. The State discovered the district court had destroyed the files and did not have a copy of the judgment and sentence from the prior indecent exposure case. Instead, the State obtained witness names from the incident.

The first day of trial, the State moved to amend the information a second time. The State requested dismissal of the charge of communication with a minor for immoral purposes and addition of a special allegation of sexual motivation to the remaining count of indecent exposure. The trial court granted the amendment.

Before opening statements, the State requested admission of testimony from witness Erika Miller about Conaway's prior act of indecent exposure, from approximately 10 years before. The trial court admitted the evidence to prove motive, intent, knowledge, and lack of accident or mistake. The trial court also admitted the docket from the 2007 misdemeanor indecent exposure conviction

3

as proof of the prior offense required for the charge of felony indecent exposure.[1] This conviction allegedly stemmed from the incident described by Miller's testimony.

Miller testified about an incident she witnessed in 2006 or 2007.[2] She worked at an Oak Harbor public pool as the aquatic director supervisor. From her raised office in the middle of the pool deck, she observed Conaway in the hot tub. She saw several teenage girls in and around the hot tub as well. Conaway had his hands in his lap and a smirk or leer on his face. He made a downward motion with his hands in his lap, which Miller interpreted as Conaway pulling down the front of his shorts and exposing himself. The three or four teenage girls "recoiled" and immediately left the area. Miller went to investigate and a very upset adult woman spoke with her. Miller saw only the hand movement and Conaway's facial expression. She admitted she did not actually see Conaway expose himself.

After a day of testimony, the jury convicted Conaway of felony indecent exposure and found he had committed the crime with sexual motivation.

## II.
## ANALYSIS

### A. ER 404(b) Evidence of Prior Misconduct

Conaway argues the trial court erroneously admitted prejudicial propensity evidence in the form of Miller's testimony about his prior misconduct at the swimming pool. We agree.

---

[1] Felony indecent exposure requires a prior conviction of indecent exposure or a sex offense. RCW 9A.88.010(2)(c).

[2] Miller was unclear on the year and date.

> Under ER 404(b):
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In determining the admissibility of prior acts, "the court first must analyze whether the evidence is logically relevant to prove an 'essential ingredient' of the charged crime rather than simply to show the defendant had a propensity to act in a certain manner which he followed on that particular occasion." State v. Bowen, 48 Wn. App. 187, 190, 738 P.2d 316 (1987), overruled on other grounds by State v. Lough, 125 Wn.2d 847, 889 P.2d 487 (1995).

Before admitting ER 404(b) evidence, the trial court must (1) find by a preponderance of the evidence the misconduct occurred; (2) determine the prior misconduct is relevant to a material issue; (3) state on the record the purpose of admission; and (4) determine the probative value of the evidence outweighs the danger of undue prejudice. State v. Vars, 157 Wn. App. 482, 495, 237 P.3d 378 (2010). Courts must presume evidence of past acts is inadmissible and resolve any doubts about admissibility in favor of the defendant. State v. Fuller, 169 Wn. App. 797, 829, 282 P.3d 126 (2012).

The trial court admitted Miller's testimony about the incident at the Oak Harbor pool to prove motive, intent, knowledge, and absence of mistake or accident. The admission of evidence lies within the sound discretion of the trial court. State v. Halstien, 122 Wn.2d 109, 126, 857 P.2d 270 (1993). Therefore, an appellate court reviews evidentiary rulings for abuse of discretion. Halstien,

122 Wn.2d at 126. A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. Vars, 157 Wn. App. at 494.

### 1. Mistake or accident

The State claims admissibility of the evidence to disprove accident or mistake in order to prove the essential element of intent. But mistake or accident is not a material issue unless first raised by the defendant. State v. Ramirez, 46 Wn. App. 223, 228, 730 P.2d 93 (1986). "Evidence of other misconduct that the State offers to prove absence of mistake or accident must directly negate such a defense." Ramirez, 46 Wn. App. at 228. Otherwise, evidence of lack of mistake or accident is not relevant and is inadmissible. See Ramirez, 46 Wn. App. at 228; ER 402.

Here, Conaway's defense was a general denial. He did not argue mistake or accident (though the State did address this in closing argument). Because Conaway did not raise these defenses, Miller's testimony was irrelevant and, therefore, inadmissible on this ground.

### 2. Intent

To convict Conaway of indecent exposure, the jury needed to find that he acted intentionally.[3] The trial court admitted Miller's testimony to show intent, stating, "The prior incident would be certainly highly relevant to Mr. Conaway's intent in 2016."

---

[3] "A person is guilty of indecent exposure if he or she intentionally makes any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm." RCW 9A.88.010(1).

While admissible to show intent, admission of prior bad acts requires a logical theory, other than propensity, that demonstrates how the prior acts connect to the intent required to commit the charged offense. State v. Wade, 98 Wn. App. 328, 337, 989 P.2d 576 (1999) (facts of prior convictions differed significantly and could not be admitted to show intent). The improper use of prior similar bad acts to prove criminal intent essentially relies on inference:

> When the State seeks to prove the element of criminal intent by introducing evidence of past similar bad acts, the State is essentially asking the fact finder to make the following inference: Because the defendant was convicted of the same crime in the past, thus having then possessed the requisite intent, the defendant therefore again possessed the same intent while committing the crime charged. If prior bad acts establish intent in this manner, a defendant may be convicted on mere propensity to act rather than on the merits of the current case.

Wade, 98 Wn. App. at 335. Use of prior bad acts to prove intent is generally based on propensity when the only commonality is the defendant. Wade, 98 Wn. App. at 335. A non-propensity based theory requires a degree of similarity among the facts of the acts themselves. Wade, 98 Wn. App. at 335-37 (evidence of prior acts, occurring within fourteen months of the crime at hand, inadmissible to show intent to distribute cocaine; while current and prior acts all involved cocaine, evidence of previous offenses, including police observation of drug trafficking and sale of drugs to undercover police, differed significantly from facts of the charged offense where defendant merely emptied a baggy of cocaine out of his pocket and ran after seeing a police officer).

Here, the acts have few commonalities. According to Miller's testimony, the earlier incident, from approximately 10 years before, occurred in front of

7

multiple people, including teenage females, in a public location, with an overt gesture when Conaway pulled down the front of his trousers. On the other hand, the incident at issue occurred surreptitiously with a single teenage female witness.

With few commonalities between the past misconduct and the current charge, admission of the evidence allowed for the impermissible inference at the heart of ER 404(b), "because the defendant was convicted of the same crime in the past, thus having then possessed the requisite intent, the defendant therefore again possessed the same intent while committing the crime charged." Wade, 98 Wn. App. at 335. The court admitted Miller's testimony to show he had similar intent in the current case. The court did not address any degree of commonality between the two incidents. Rather, it stated, "The state [sic] has the burden of proving Mr. Conaway's intent to engage in the alleged indecent exposure, and it would certainly be relevant to that intent if he had done the same thing on a previous occasion." This allows the jury to infer Conaway exposed himself before so he must have done it again. ER 404(b) specifically prohibits this propensity evidence.

### 3. Motive

The State offered Miller's testimony to prove the sexual motivation aggravator. Sexual motivation "means that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification." RCW 9.94A.030(48) and .835. This requires the jury to consider the defendant's motive.

The trial court admitted Miller's testimony to show motive: "[T]he prior incident would be directly relevant to Mr. Conaway's motive in connection with the current incident. Again to show that this was something he intentionally did and had an impulse and a desire to do, that induced him to form the intent to commit the act in 2016." Under the trial court's reasoning, Conaway's 10-year-old conduct described above shows impulse and desire and thus current motive.

But Conaway's prior act in 2006 fails to demonstrate a motive for exposing himself to a different person almost 10 years later. See Saltarelli, 98 Wn.2d 358, 365, 655 P.2d 697 (1982). ("It is by no means clear how an assault on a woman could be motive or inducement for defendant's rape of a different woman almost 5 years later."). "Although the State may introduce evidence of motive even if motive is not an essential element of the crime charged, the State may not show motive by introducing evidence that the defendant committed or attempted to commit an unrelated crime in the past." Fuller, 169 Wn. App. at 829; see Vars, 157 Wn. App. at 498 (multiple prior acts of indecent exposure admissible to prove sexual motivation when current actions conform to persistent pattern of prior behavior); Halstien, 122 Wn.2d at 126-27 (prior contacts with the victim admissible to show sexual motivation in commission of a burglary).

Without any explanation as to how the prior incident established motive in the current case, other than Conaway's repeated desire and impulse, the testimony amounts to little more than propensity evidence. See Bowen, 48 Wn. App. at 191. Therefore, the trial court improperly admitted Miller's testimony to prove motive.

9

4. Knowledge

As for knowledge, the State explained, "People learn from their experience. Mr. Conaway has done the same thing. He knows the reaction that he'll get from teenage girls by exposing himself. He knows that because he's done it before." While this may demonstrate knowledge,[4] the trial court must find the probative value of the evidence substantially outweighs the danger of unfair prejudice. State v. Mee, 168 Wn. App. 144, 147, 275 P.3d 1192 (2012). Evidence causes "unfair prejudice" when it is more likely to arouse an emotional response than a rational decision by the jury. City of Auburn v. Hedlund, 165 Wn.2d 645, 654, 201 P.3d 315 (2009). "A careful and methodical consideration of relevance and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest." Saltarelli, 98 Wn.2d at 363.

The court considered the prejudicial impact of the evidence as negligible, noting the conviction would likely be admitted so the jury would know about the prior conviction. It stated, "[S]imply filling in the details of what happened that resulted in the conviction would certainly be highly probative and there would be no danger of unfair prejudice to the defendant . . . this evidence would not be likely to stimulate an emotional rather than a rational response." Yet the docket established only the basic information needed to prove existence of the prior indecent exposure - a guilty plea and deferred sentence. In contrast, Miller's

---

[4] Yet query its probative value, as this type of knowledge—that such conduct would cause reasonable affront or alarm—would seem to be obvious to most.

testimony provided the more detailed and prejudicial evidence of Conaway's alleged desire to expose himself to teenage girls and established his propensity to commit the charged crime.

That Miller's testimony "filled in the details" is precisely the reason for its prejudicial impact. The details allowed the jury to infer Conaway had exposed himself before so he clearly had the desire and propensity to expose himself again. Furthermore, the evidence allowed the State to argue Conaway's repeated desire to expose himself to girls, designed to evoke the emotional response of "once a criminal, always a criminal" from the jury.

Finally, the admission of Miller's testimony and the docket may have led the jury to believe Conaway had committed two prior acts of misconduct. The State argued vigorously that Miller's testimony described the incident underlying the prior conviction shown on the docket. But the record lacks any direct connection between the prior conviction and Miller's testimony, enabling the jury to consider this evidence as separate acts of indecent exposure. This compounded the prejudicial nature of the evidence.

Given the possibility of jury confusion and the details of the prior incident intended to evoke an emotional response, the trial court abused its discretion in finding the probative value outweighed the prejudicial value of Miller's testimony.

B. Harmless Error Analysis

Because evidentiary errors under ER 404(b) are not of constitutional magnitude, we apply the nonconstitutional harmless error standard. State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014). "This requires us to

decide whether 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" Gunderson, 181 Wn.2d at 926 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).[5]

Here, the record indicates the prosecution focused heavily on Miller's testimony to prove Conaway's intent and sexual motivation. In closing argument, the State referred to the prior incident: "So when it comes to intent, you can look at this prior act to determine what his intent was." The State elaborated, "What else tells you it wasn't an accident? He did it before. He did it in the same way, same type of people, teenage girls." To further prove Conaway knew the reaction he would get from C.M., the State referred to the prior incident. "How else does he know, though? He did it before and that was the reaction."

Similarly, the State emphasized Conaway's alleged sexual interest in teenage girls when arguing the sexual motivation aggravating factor. "He likes to expose his penis to them and he likes to creep them out or get a reaction from them. He likes to see the look on their face when he exposes his penis to those people. He did it before. He got that type of a reaction." The State also reiterated Conaway's "multiple" acts in the discussion of sexual motivations. "Why else would a man, an adult man, a 39-year-old man, expose his penis to a 17- year old girl? Again, why would he do that? Multiple times."

---

[5] The State does not raise or argue the harmless error standard. Conaway also does not specifically address harmless error, but argues Miller's testimony was the only evidence of sexual motivation.

The record shows the State relied on Miller's testimony to demonstrate intent and sexual motivation. The direct evidence consisted solely of C.M.'s testimony about the facts of the incident and her feelings during the encounter. C.M. did not remember if Conaway's penis was erect, and she did not see Conaway make any hand gestures. The only evidence of sexual motivation came in the form of State's inferences based on Miller's testimony.

Without Miller's testimony, the State lacked any evidence to support a guilty verdict on the special allegation of sexual motivation. Furthermore, the State relied heavily on Miller's testimony to prove Conaway's intent. As a result, it is reasonably probable that admission of the ER 404(b) evidence materially affected the outcome of the trial. The trial court's error was not harmless. The resulting insufficiency of evidence requires reversal. See Wade, 98 Wn. App. at 338.

We reverse and remand for new trial.[6]

_Chun, J._

WE CONCUR:

_Mann, J._

_Appelwick, C.J._

---

[6] Because the erroneous admission of ER 404(b) requires reversal and remand for a new trial, we will not address Conaway's additional arguments on appeal.