[No. 6067–1–II.   Division Two.   December 13, 1983.]

THE STATE OF WASHINGTON, *Petitioner,* v. CHRIS
H. SAYLER, *Respondent.*

*Henry R. Dunn, Prosecuting Attorney,* and *Bert Paul, Deputy,* for petitioner.

*Craig W. Weston,* for respondent.

WORSWICK, J.—Respondent Chris H. Sayler lured two boys, ages 10 and 12, into the upstairs area of his garage and masturbated in front of them. He was convicted in District Court of public indecency under RCW 9A.88-.010(2), a gross misdemeanor. On appellate review under RALJ, the Superior Court held that the statute was ambiguous and must be given that meaning most favorable to respondent. Thus, the State was required to prove that the offense occurred in a public place. Since it occurred in a private place,[1] the proof was insufficient. The court dismissed the charges. We granted discretionary review, and now affirm.

The State contends that the statute is substantially identical to antecedent statutes which have been interpreted as not involving "place" as an element. Respondent argues that the place, and specifically a public place, is an element, and that the statute clearly so provides. We consider the issue to be not so much what the statute means, but whether it is ambiguous, *i.e.,* reasonably susceptible of more than one meaning including the one advanced by respondent. *See In re Estate of Torando,* 38 Wn.2d 642, 228 P.2d 142, 236 P.2d 552 (1951). In summary, we conclude that the antecedent statutes are not substantially identical and, even if some of the words are the same or similar, earlier Washington cases did not address, let alone resolve, the issue presented here, nor is there persuasive authority from other jurisdictions. Therefore, we must resort to usual rules of construction, established meanings of language and common sense. When we do this, we find

---

[1]The State does not contend otherwise.

the statute ambiguous. Therefore, the Superior Court was correct in adopting the meaning most favorable to respondent. *State v. Lundell,* 7 Wn. App. 779, 503 P.2d 774 (1972).

RCW 9A.88.010 is part of the comprehensive criminal code revision which became effective in 1976.[2] It provides:

> (1) A person is guilty of *public* indecency if he makes any *open* and obscene *exposure* of his person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm.
>
> (2) Public indecency is a misdemeanor unless such person *exposes* himself *to a person* under the age of fourteen years in which case indecency is a gross misdemeanor.

(Italics ours.) The State argues that this statute descended from two antecedents, former RCW 9.79.080 and former RCW 9.79.120. The first provided:

> (1) Every person who takes any indecent liberties with, or on the person of any other person of chaste character, without the other person's consent, shall be guilty of a gross misdemeanor;
>
> (2) Every person who takes any indecent liberties with or on the person of any child under the age of fifteen years, or makes any *indecent* or obscene *exposure* of his person, or of the person of another, whether with or without his or her consent, shall be guilty of a felony, and shall be punished by imprisonment in the state penitentiary for not more than twenty years, or by imprisonment in the county jail for not more than one year.

(Italics ours.) Laws of 1973, 1st Ex. Sess., ch. 154, § 129. The second provided:

> Every person who shall lewdly and viciously cohabit with another not the husband or wife of such person, and every person who shall be guilty of open or gross lewdness, or make any *open* and indecent or obscene *exposure* of his person, or of the person of another, shall be guilty of a gross misdemeanor.

(Italics ours.) Laws of 1909, ch. 249, § 206. The State argues that three Washington cases have interpreted these statutes

---

[2] Laws of 1975, 1st Ex. Sess., ch. 260.

as dealing with the same conduct. *Gardner v. Smith,* 81 Wn.2d 365, 502 P.2d 333 (1972); *State v. Galbreath,* 69 Wn.2d 664, 419 P.2d 800 (1966); *State v. Kosanke,* 23 Wn.2d 211, 160 P.2d 541 (1945). It contends that a later case went even further and specifically held that "place" was not an element because "open" used in connection with "exposure" does not refer to place. *State v. Eisenshank,* 10 Wn. App. 921, 521 P.2d 239 (1974). We conclude that the antecedent statutes are not substantially identical in that neither uses the word "public."[3] More importantly, we conclude that the cases cited do not support the State's position.

In *Kosanke,* defendant was charged and convicted under the statute,[4] later codified as RCW 9.79.080, because of alleged misbehavior with a minor girl. He contended the information was duplicitous because it charged a felony under that statute and also charged a misdemeanor under the statute later codified as RCW 9.79.120. The Supreme Court simply held that there was no duplication because, although both statutes referred to indecent acts, subsection .080(2) created a felony because minors were the protected class of victims.

*Galbreath* only involved a constitutional vagueness challenge to former RCW 9.79.080(2) because of the words "indecent" and "obscene." The Supreme Court rejected the challenge.

*Gardner* was a habeas corpus proceeding. Petitioner, convicted under former RCW 9.79.080(2) of a felony involving a minor girl, claimed an equal protection violation contending that identical misconduct was only a misdemeanor under former RCW 9.79.120. The court held, as it had in *Kosanke,* that, although both statutes dealt with

---

[3]The purity of statutory lineage is not quite as the State claims. The first territorial lewdness statute refers to *public* indecency. Laws of 1854, p. 96, § 117. The word "public" was dropped in what appears to be an 1869 revision. Laws of 1869, p. 225, § 120. It did not reappear until the present enactment.

[4]Laws of 1937, ch. 74, § 2.

indecent or obscene exposure, the offense was elevated to a felony under subsection .080(2) because children were the victims.

*Eisenshank,* upon which the State principally relies, involved one exposure committed in the view of nine children and seven adults. The State charged nine counts under former RCW 9.79.080(2) and seven under former .120. We held this improper, reasoning that the offense was committed when an exposure of the requisite vulgarity took place regardless of the number of witnesses; that the exposure was the crime and the impact on the witness to it was, essentially, immaterial.

No issue was raised in any of these cases as to the place of the offense or the meaning of "open"; neither does it appear that the deciding courts were called upon to notice and discuss the fact that "open" was used in one statute and not the other. They do suggest that both statutes dealt with the same kind of socially repugnant behavior. There is, however, no issue here as to the quality of respondent's behavior. It obviously was indecent and obscene.

The State cites several cases from other jurisdictions. We find them of no help because the language of the statutes is different or the reasoning is unpersuasive.[5]

---

[5]*State v. Juneau,* 88 Wis. 180, 59 N.W. 580 (1894): under statute punishing "open and gross lewdness," word "open" held not to refer to place but to quality of act. Statute did not use words "public" or "exposure."

*State v. Hoffman,* 68 N.D. 610, 282 N.W. 407 (1938): prosecution for unlawful cohabitation which punished "[e]very person who lives openly and notoriously and cohabits . . ." "Openly" held to mean undisguised and unconcealed *as opposed to hidden and secret,* and not to refer to place.

*State v. Granger,* 199 S.W.2d 896 (Mo. Ct. App. 1947): indecent exposure case in which the court first interpreted the statute as requiring the act to be "open and public" (although not the statutory language) and then held that these requirements were met when done in a private room with only one witness. We are not persuaded by such reasoning.

*State v. Smith,* 98 N.H. 149, 95 A.2d 789 (1953): really involves a double jeopardy question. Two statutes involved; one prohibited "open lewdness." "Open" held to refer to quality of act, not place, citing *Juneau.* Distinguishable on same basis.

*State v. Pallman,* 5 Conn. Cir. Ct. 202, 248 A.2d 589 (1968): indecent exposure conviction under statute providing "[a]ny person who, wantonly and indecently,

*Eisenshank* did hold that the offense under either former statute was complete upon the performance of an indecent act "in the presence of another . . ." *Eisenshank,* 10 Wn. App. at 924. This is, however, slender support for the State's position. We are not aware that anyone has ever contended that the Legislature intended to create a sex crime involving an exposer and no exposee; *Eisenshank* says nothing more than the obvious.

We are left, then, with a question of statutory interpretation of first impression in this state with no guidance except the usual principles of statutory construction. It is our obligation to construe this penal statute strictly to the end that activities not intended to be included within it shall not be prosecuted. At the same time, we cannot construe it in a forced, narrow or overly strict manner so as to defeat the intent of the Legislature. *State v. Clark,* 96 Wn.2d 686, 638 P.2d 572 (1982). If we find it *reasonably* susceptible of more than one meaning, we must adopt that reasonable meaning most favorable to the accused. *State v. Lundell,* 7 Wn. App. 779, 503 P.2d 774 (1972). In our view, it is at least as reasonable to interpret RCW 9A.88.010(2) as reaching only indecent acts committed in a public place as it is to accept the interpretation urged by the State. It is also as reasonable to assume that this was the intent of the Legislature as it is to assume some other intent.

It is significant to us that the Legislature saw fit to name this offense "public indecency." If the statute represented nothing more than a minor revision and recodification of substantially identical antecedents as the State seems to suggest, there would have been no reason to use the word "public," which has not been part of this body of law since 1869. This appears to denote a shift in legislative policy. *See Connick v. Chehalis,* 53 Wn.2d 288, 291, 333 P.2d 647 (1958). This view is fortified by the comment to this section prepared by the staff of the Washington State Criminal Justice Training Commission, as follows:

---

exposes his person shall be fined . . ." etc. Statute did not use "open" or "public."

*Comment*—While this section is somewhat similar to part of MPC section 213.5, the emphasis of the MPC was upon the actor's intent. The emphasis in this section *is on the setting in which the exposure occurs,* though a knowledge requirement with reference to the consequences of the actor's exposure is retained. In short, this section is not primarily designed as a sexual offense; rather, *the reason for the creation of the offense is to prevent a type of conduct which is strongly offensive and alarming to most of the general public, namely, exposure in a public place.*

(Italics ours.) Washington State Crim. Just. Training Comm'n, *Revised Criminal Code Training and Seminar Manual* (compiled and edited by G. Golob & G. Mooney 1976).[6]

■ We believe it is appropriate in interpreting a statute to use simple logic and to give ordinary English words their ordinary meaning. RCW 9A.88.010(1) defines the elements of the crime and (2) enhances the punishment if children are involved. Three ordinary words, italicized in the statutory text above, are significant in analyzing subsection (1): "public," "open" and "exposure." Webster tells us that: "public" means "1: a place accessible or visible to all . . ."; "open" means "2a: completely free from concealment: exposed . . ."; and "expose" means "2: to lay open to view . . .". *Webster's Third New International Dictionary* (1969). Logic and a decent respect for both language and the Legislature tell us that the latter would not in this context have used "open" as an adjective to "exposure" because the words are synonyms. Therefore, it is logical to assume that "open" is used in relation to, and in the same sense as, "public." Thus, the forbidden conduct is public conduct, and public, in the context, must refer to place.[7]

---

[6]We have made extensive but unsuccessful efforts to identify more specific legislative history. Lack of a resource for this purpose is a glaring deficiency in this state.

[7]The conduct involved in this case has not been overlooked in the criminal code. The State could have charged communication with a minor for immoral purposes. RCW 9A.44.110.

Affirmed.

PETRICH, C.J., and REED, J., concur.