# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69618-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED |
| JAMES VINCENT SWANSON, | ) | |
| | ) | FILED: June 23, 2014 |
| Appellant. | ) | |
| | ) | |

COX, J. — James Vincent Swanson appeals his judgment and sentence for his conviction of indecent exposure with sexual motivation, claiming that he was denied a fair trial because of prejudicial prosecutorial misconduct. In closing, the prosecutor misstated the law in arguing what the State was required to prove to convict Swanson of the crime. The trial court overruled Swanson's timely objection to this misstatement. But the misstatement of the law was not prejudicial in the context of the full trial. We affirm.

In 2012, the State charged Swanson with indecent exposure with sexual motivation. The charge was based on an incident that occurred at the Cowgirls Espresso stand in Lynnwood, Washington.

At trial, the State presented testimony from a female barista who worked at the stand and wore a bikini while she worked. She testified that the incident

occurred in the early morning hours of May 25, 2011 when it was still dark outside. She stated that the espresso stand has windows on both sides and is high enough that she can see down into cars including "the whole entire driver's seat, about to the knees."

The barista identified Swanson as the first customer of the day. She testified that his car did not come through in a normal fashion. Rather, he stopped his car about a foot further back from the window than most customers. But the barista stated that she could still see into the car "very well." She also stated that she became curious because "no one normally stops back there."

The barista greeted Swanson. He placed a drink order. She then saw Swanson masturbating. She observed his pants unzipped, unbuttoned, and folded down in the front. She could see his shoulder and hand moving. She continued to watch him out of the corner of her eye while she made his coffee drink. This took about 45 seconds to a minute. The barista testified that Swanson continued to masturbate during this time. She stated that she "tried to ignore everything."

Swanson paid by credit card. It appears that this helped police identify and arrest him. The barista testified that Swanson's hand was on his penis when he handed her the credit card. He used both hands to fill out the receipt, but his penis remained exposed.

Following the taking of exceptions to its proposed instructions, the court instructed the jury. During closing argument, the parties argued contrary interpretations of the court's instructions to the jury on what the State was

2

required to prove. Later in this opinion, we explain in more detail the exact nature of these conflicting arguments.

The jury returned a verdict of guilty as charged.

Swanson appeals.

## PROSECUTORIAL MISCONDUCT

Swanson argues that he was denied his constitutional right to a fair trial when the prosecutor misstated the law in closing argument and rebuttal. He also claims this misstatement was prejudicial. We agree that the prosecutor misstated the law. But this misstatement was not prejudicial.

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial."[1] Prosecutorial misconduct is grounds for reversal if the prosecutor's conduct was both improper and prejudicial.[2]

### Preservation of Issue

The State first contends that Swanson failed to preserve this claim for review. Specifically, the State argues that although defense objected during rebuttal, "[n]o clarification for the basis of the objection was offered." We hold that Swanson properly preserved this argument.

The trial court instructed the jury as follows:

Instruction No.7

A person commits the crime of indecent exposure when he or she intentionally makes any open and obscene exposure of his or her person knowing that such conduct is likely to cause

---

[1] In re Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012).

[2] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011).

reasonable affront or alarm, and that the person had been previously convicted of Indecent Exposure under RCW 9A.88.010.[3]

    Instruction No. 8

    To convict the defendant of the crime of Indecent Exposure, each of the following elements of the crime must be proved beyond a reasonable doubt:

    (1) That on or about the 25th day of May, 2011, the defendant made an open and obscene exposure of the defendant's person to [the barista];

    (2) That the defendant acted intentionally;

    (3) That the defendant knew that such conduct was likely to cause reasonable affront or alarm;

    . . .[4]

During closing argument, the prosecutor opened by arguing what he believed these instructions required the State to prove to obtain a conviction.

In reply, defense counsel argued a contrary view of what she believed the same instructions required of the State.

In rebuttal, the prosecutor characterized defense counsel's argument as a "misstatement of the law."[5] He again argued his interpretation of the instructions.

Defense counsel objected.[6] The trial court overruled the objection, stating

---

[3] Clerk's Papers at 45.

[4] Id. at 46.

[5] Report of Proceedings (Oct. 16, 2012) at 137.

[6] Id. at 138.

that the jury would have the court's instructions.[7]

ER 103(a)(1) requires "a timely objection . . . stating the specific ground of objection, *if the specific ground was not apparent from the context.*"[8]

Here, the specific ground for the objection to the State's argument was apparent from the context. There simply is no dispute what the nature of the objection was. It was focused on the conflicting arguments of what the instructions required the State to prove. Thus, it is clear that the parties and the court knew the specific ground for objection. Swanson preserved his claim for review.

### *Prosecutor's Misstatements*

Swanson argues that the prosecutor misstated the law when he argued that the jury must only find that Swanson intended the act that resulted in an open and obscene exposure. We agree.

"As a quasi-judicial officer representing the people of the State, a prosecutor has a duty to act impartially in the interest only of justice."[9] The prosecutor may not misstate the law to the jury.

Both sides appear to agree that these instructions are consistent with the underlying statute for indecent exposure. When interpreting a statute, a court

---

[7] Id.

[8] (Emphasis added.)

[9] State v. Warren, 165 Wn.2d 17, 27, 195 P.3d 940 (2008).

seeks to follow the legislature's intent.[10] "If the statute's meaning is plain, [the court] give[s] effect to that plain meaning as the expression of the legislature's intent."[11]

The indecent exposure statute, RCW 9A.88.010, states:

> (1) A person is guilty of indecent exposure *if he or she intentionally makes any open and obscene exposure* of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm. The act of breastfeeding or expressing breast milk is not indecent exposure.[12]

Here, the question is what the State must prove to establish a violation of this statute. Specifically, the question is whether the State had to prove not only that Swanson intended the act but also that Swanson intended the exposure be "open." We conclude that it did.

The United States Supreme Court case Flores-Figueroa v. United States is instructive.[13] There, the Court examined a federal statute that imposes a mandatory two-year prison term upon individuals convicted of certain crimes if the offender "'knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.'"[14] The question was "whether the statute requires the Government to show that the defendant knew that the

---

[10] Bostain v. Food Express, Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007).

[11] Id.

[12] (Emphasis added.)

[13] 556 U.S. 646, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009).

[14] Id. at 647 (emphasis omitted) (quoting 18 U.S.C. § 1028A(a)(1)).

'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person.'"[15]

The Court stated, "As a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime."[16] It explained, "In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action . . . ."[17]

Further, the Supreme Court stated that "[t]he manner in which the courts ordinarily interpret criminal statutes is fully consistent with this ordinary English usage."[18] "That is to say courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."[19]

This court considered a similar question in State v. Killingsworth.[20] There, this court reviewed a to-convict instruction that required the jury to find that the

---

[15] Id. (emphasis omitted).

[16] Id. at 650.

[17] Id.

[18] Id. at 652.

[19] Id.

[20] 166 Wn. App. 283, 269 P.3d 1064, review denied, 174 Wn.2d 1007 (2012).

defendant "knowingly trafficked in stolen property."[21] Killingsworth claimed that the instruction failed to require proof that he knew the property in question was stolen.[22] This court rejected his argument.[23] It stated, "The most natural reading of the adverb 'knowingly,' as used in this instruction, is that it modifies the verb phrase 'trafficked in stolen property.'"[24] Thus, it concluded that "knowingly" modifies both "trafficked" and "stolen."[25] It stated that this conclusion was reinforced by the fact that the instruction tracks the language of the statute and that "[t]he statute's intent is plain: to criminalize the trafficking of property known to be stolen."[26] Further, it opined that to read "knowingly" as modifying only the word "trafficked" would lead to an "absurd result."[27]

More recently, this court came to a similar conclusion in State v. Zeferino-Lopez.[28] There, Felipe Zeferino-Lopez was charged with second degree identity theft. The issue was whether the State was required to prove that Zeferino-Lopez knew that the means of identification he used belonged to another

---

[21] Id. at 288.

[22] Id. at 289.

[23] Id.

[24] Id.

[25] Id.

[26] Id.

[27] Id.

[28] ___ Wn. App. ___, 319 P.3d 94 (2014).

person.[29] In relevant part, the statute stated, "No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead . . . ."[30] Citing Flores-Figueroa and Killingsworth, this court concluded that the statutory term "knowingly" also refers to the defendant's knowledge that the means of identification belonged to another person.[31]

Here, the statute states that a person is guilty of indecent exposure if he or she "*intentionally makes any open and obscene exposure* of his or her person or the person of another . . . ."[32] Like the cases discussed previously, the most natural reading of this statute and the instructions is that the adverb "intentionally" modifies the verb phrase "makes any open and obscene exposure." Read this way, "intentionally" not only modifies "make," but it also modifies "open" and "obscene." Accordingly, the State was required to prove not only that Swanson intended to masturbate, but also, that he intended that the masturbation be "open and obscene."

Accordingly, the next question is whether the prosecutor misstated the law during rebuttal. We conclude that he did.

Again, the jury instructions stated:

---

[29] Zeferino-Lopez, 319 P.3d at 96.

[30] Id. (quoting RCW 9.35.020(1)).

[31] Id. at 96-97 (citing Flores-Figueroa, 556 U.S. 646; Killingsworth, 166 Wn. App. 283).

[32] RCW 9A.88.010(1).

9

Instruction No. 7

A person commits the crime of indecent exposure when he or she intentionally makes any open and obscene exposure of his or her person knowing that such conduct is likely to cause reasonable affront or alarm, and that the person had been previously convicted of Indecent Exposure under RCW 9A.88.010.[33]

Instruction No. 8

To convict the defendant of the crime of Indecent Exposure, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 25th day of May, 2011, the defendant made an open and obscene exposure of the defendant's person to [the barista];

(2) That the defendant acted intentionally;

(3) That the defendant knew that such conduct was likely to cause reasonable affront or alarm;

. . .[34]

During rebuttal, the prosecutor stated:

[PROSECUTOR]: *[T]he defense would have you believe that [Swanson] has to intend that it be open and intend that it be obscene, apparently.* But what this [Instruction No. 7] says is, he has to intend the exposure, and the exposure has to be open and obscene, which it was in this case, which is exactly why Instruction Number 8 is broken up much more specifically, and it's phrased in a different order. *It [Instruction No. 8] makes crystal clear that [Swanson] had to make—it doesn't say anything about intend, it says "make"—an open and obscene exposure of his person to [the barista]. And then number (2) is where the intent comes, where it says that he intended to act.* That's why I spent the time earlier saying you don't have to intend it to be a crime; *you have to intend the act that turns out to be a crime.*

---

[33] Clerk's Papers at 45.

[34] Id. at 46.

10

[DEFENSE COUNSEL]: I'm going to object, your Honor.

THE COURT: Overruled. The jury will have the instructions which I have given. Those are the instructions which apply.[35]

Additionally, the prosecutor stated, "[D]on't focus on the first half of the sentence in [Instruction] Number 7 and ignore the context, the definitions and, specifically, [Instruction] Number 8, which is what you have to step through."[36]

The prosecutor's argument stated that the jury only had to find that Swanson intended the act, but not that it had to find that Swanson intended the act to be open and obscene. Because a plain reading of the statute and the instructions shows that this is not the law, the prosecutor's argument was a misstatement.

### *Prejudice*

Swanson must also prove that he was prejudiced from this misstatement of the law. He argues that there was a substantial likelihood that the prosecutor's misconduct affected the verdict. Specifically, he asserts that the misconduct "effectively depriv[ed] the defense of its ability to argue its theory of the case." We disagree.

"Where improper argument is claimed, the defense bears the burden of establishing the impropriety of the prosecuting attorney's comments as well as their prejudicial effect."[37] "Reversal is not required if the error could have been

---

[35] Report of Proceedings (Oct. 16, 2012) at 137-38 (emphasis added).

[36] Id. at 138.

[37] State v. Gentry, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995).

obviated by a curative instruction, which the defense did not request."[38] "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict."[39]

"Instead of examining improper conduct in isolation, [a reviewing court] determine[s] the effect of [the] prosecutor's improper conduct by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'"[40] When a trial court overrules a defendant's timely objection to the State's improper comment, the trial court may "len[d] an aura of legitimacy to what was otherwise improper argument."[41] This may "increase[ ] the likelihood that the misconduct affected the jury's verdict."[42]

Here, Swanson's theory of the case was that "[i]t's only a crime to masturbate in your car *if you intend for someone there to see what you are doing* and to—with the knowledge that they are going to be alarmed at the sight of it."[43] Defense counsel argued during closing, "The intention is that it be open;

---

[38] Id.

[39] State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

[40] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

[41] See State v. Davenport, 100 Wn.2d 757, 764, 675 P.2d 1213 (1984).

[42] State v. Perez-Mejia, 134 Wn. App. 907, 920, 143 P.3d 838 (2006).

[43] Report of Proceedings (Oct. 16, 2012) at 130-31 (emphasis added).

*that it be seen by someone else.* That's what the State has to prove beyond a reasonable doubt, that Mr. Swanson, in going through that Espresso drive-through, *intended that barista to see what he was doing in his car.*"[44]

Essentially, Swanson equated "open" to being seen. But "open" does not mean "seen" as Swanson argues. Rather, "open" as it is used in the statute, describes the place of the exposure.

In 1983, in <u>State v. Sayler</u>, Division Two analyzed the public indecency statute.[45] There, Chris Sayler was convicted of public indecency after he masturbated in front of two boys in his garage. On appeal, Division Two concluded that the statute was ambiguous about whether the State was required to prove that the offense occurred in a public place.[46] The version of the statute at issue in that case stated: "A person is guilty of public indecency if he makes any open and obscene exposure of his person or the person of another . . . ."[47] Notably, in reaching its conclusion, the court stated that the legislature "would not in this context have used 'open' as an adjective to 'exposure' because the words are synonyms."[48] It further stated, "Therefore, it is logical to assume that 'open'

---

[44] <u>Id.</u> at 131 (emphasis added).

[45] 36 Wn. App. 230, 673 P.2d 870 (1983).

[46] <u>Id.</u> at 231-32.

[47] <u>Id.</u> at 232 (emphasis omitted) (quoting former RCW 9A.88.010(1) (1975)).

[48] <u>Id.</u> at 236.

13

is used in relation to, and in the same sense as, 'public.' Thus, the forbidden conduct is public conduct, and public, in the context, must refer to place."[49]

Following Sayler, the legislature amended the statute to rename the crime from "public indecency" to "indecent exposure."[50] But the legislature did not remove the word "open" from the statute.[51] The statute was amended as follows: "A person is guilty of indecent exposure if he intentionally makes any open and obscene exposure of his person or the person of another . . . ."[52] The legislature was aware of Sayler when it amended the statute, as evidenced by the bill report for the amendment.[53]

In State v. Dubois, this court stated that the legislature created ambiguity when it changed the title of the crime but did not remove the word "open," which was interpreted in Sayler to mean "public."[54] But, after applying general rules of statutory construction, this court stated, "Nevertheless, it is apparent that the Legislature intended to make it possible to indecently expose oneself in a private

---

[49] Id.

[50] See State v. Dubois, 58 Wn. App. 299, 301-02, 793 P.2d 439 (1990) (citing former RCW 9A.88.010 (1975), former RCW 9A.88.010(1) (1987)).

[51] See former RCW 9A.88.010(1) (1987).

[52] Id.

[53] Dubois, 58 Wn. App. at 302 (citing FINAL BILL REP. on S.B. 6012, 50th Leg., 1st Spec. Sess. (Wash. 1987)) (stating "A 1983 Washington Court of Appeals decision held that, under the current statute, an exposure of one's person must occur in a public place to constitute the crime of public indecency. It remains doubtful whether an individual can be convicted of public indecency where the offense occurs in a private place.").

[54] 58 Wn. App. 299, 303, 793 P.2d 439 (1990).

place."[55] Accordingly, this court also interpreted "open" to describe the place of the exposure—interpreting it to include both private and public places.

This court recently reaffirmed this view in State v. Vars when this court stated, "[T]he gravamen of the crime is an intentional and 'obscene exposure' *in the presence of another* that offends society's sense of 'instinctive modesty, human decency, and common propriety.'"[56] This court also stated, "So long as an obscene exposure takes place **when another is present** and the offender knew the exposure likely would cause reasonable alarm, the crime has been committed."[57] And it stated, "Simply because RCW 9A.88.010 requires an exposure of genitalia *in the presence of another*, it does not mean that the other person must observe the defendant's private parts for an indecent exposure to have occurred."[58] The emphasized provisions above indicate that "open" means "in the presence of another." Further, Vars makes clear that the other person need not see the defendant's private parts for there to be an indecent exposure. Moreover, there is nothing in the plain language of the statute to suggest that "open" means "seen."

Accordingly, because "open" describes the place of the exposure, Swanson was not "deprived" of the ability to argue his theory of the case. As

---

[55] Id. at 304.

[56] 157 Wn. App. 482, 491, 237 P.3d 378 (2010) (emphasis added).

[57] Id. (emphasis added).

[58] Id. (emphasis added).

15

discussed previously, the State did not have to prove that Swanson intended for the barista to see what he was doing.

Next, looking to the evidence presented, we conclude that there was overwhelming evidence presented to prove that Swanson intended the exposure to be open—*i.e.* in the presence of another. Swanson drove up to the espresso stand and stopped about a foot back from the service window. The barista was standing at the window. Swanson spoke to the barista and ordered an espresso drink. He was masturbating while the barista continued to stand near the window and make his drink. Swanson handed the barista his credit card while his other hand was on his penis. Swanson filled out the receipt and handed it to the barista while he remained exposed. Moreover, as the State points out, there was no evidence that Swanson accidentally or mistakenly drove up to the window. In sum, there was overwhelming evidence that Swanson intended the exposure to be "open."

Swanson argues that the trial court erred when it overruled defense counsel's objection and in doing so "put its stamp of approval on the prosecutor's interpretation." It is true that this action "lent an aura of legitimacy to what was otherwise improper argument."[59] Further, it increased the likelihood that the misconduct affected the jury's verdict.[60] But the misstatement of the law by the State did not deprive Swanson of the ability to argue his theory of the case. That theory was also an erroneous statement of the law. Moreover, on this record, it

---

[59] See Davenport, 100 Wn.2d at 764.

[60] See Perez-Mejia, 134 Wn. App. at 920.

16

is clear that Swanson intended for his actions to be open and obscene, as the statute requires.

For these reasons, Swanson fails to establish prejudice warranting reversal of his conviction.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Verellen, A.C.J._                   _Appelwick, J._