IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, , | ) | No. 32546-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SIMEON JUSTIN JIM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — Simeon Jim appeals his second degree assault conviction. He contends the prosecutor committed misconduct in closing argument by improperly arguing the requisite mental state. Because he fails to show prejudice, we affirm.

FACTS

Mr. Jim is a distant relative of Elizabeth Capetillo, a Native American. She is married to non-Native American Guadalupe Capetillo, causing family friction. On April 9, 2013, Mr. Jim and Jordan Yazzie, Ms. Capetillo's nephew, spent the evening drinking with Mr. Yazzie's ex-girlfriend. After the ex-girlfriend kicked Mr. Yazzie out, the pair walked to the Capetillos' house, arriving around 5:00 a.m. on April 10, 2013.

Mr. Yazzie banged on the kitchen door. Mr. Jim sat on the steps. Mr. Capetillo heard the banging and heard Mr. Jim and Mr. Yazzie talking. Given the family frictions

and prior incidents of Mr. Yazzie having come to their home late at night asking for rides or money, Mr. Capetillo was annoyed. Mr. Yazzie was not welcome at the Capetillos' home when he was drunk. Mr. Capetillo told the two men to leave. As Mr. Capetillo and Mr. Yazzie engaged in a hostile verbal exchange, the pair moved onto the driveway. Witness accounts differed about the details of what happened next, but everyone agreed Mr. Jim punched Mr. Capetillo in the head. Mr. Capetillo fell, struck his head on the driveway, had an apparent seizure, and was injured. Mr. Jim later testified he intentionally punched Mr. Capetillo and stipulated to resulting substantial bodily harm.

In 2012, Mr. Capetillo had brain tumor surgery and underwent radiation therapy. He suffered weakness in his left arm and leg. Ms. Capetillo testified solely her immediate family knew of her husband's medical issues. Ms. Capetillo testified she kept yelling at Mr. Yazzie during the incident, asking him why he wanted to fight Mr. Capetillo when he knew Mr. Capetillo could not fight, was on medication, and could barely walk around. Mr. Jim was nearby when Ms. Capetillo yelled at Mr. Yazzie.

In discussing the jury instructions, mainly focused on self-defense and defense of others, the State objected to instructing the jury on third degree assault as a lesser offense, noting Mr. Jim had admitted to intentionally assaulting Mr. Capetillo and had stipulated to resulting substantial bodily harm. Disagreeing, the trial court explained there were different mental states for the act and the result. In its instruction on second degree assault, the court said, "A person commits the crime of Second Degree Assault

2

when he assaults another and thereby recklessly inflicts substantial bodily harm."

Clerk's Papers (CP) at 33. The to-convict instruction reiterated this, stating the jury

must find Mr. Jim assaulted Mr. Capetillo thereby recklessly inflicting bodily harm on Mr.

Capetillo. The court then defined the relevant mental states.

During closing argument, the prosecutor partly argued because Mr. Jim admitted

to intentionally striking Mr. Capetillo and stipulated to the resulting substantial bodily

harm, Mr. Jim intentionally assaulted Mr. Capetillo, thereby recklessly inflicting

substantial bodily harm on Mr. Capetillo. The prosecutor then reviewed the four mental

states recognized in law. Finally, the prosecutor argued Mr. Jim could not be convicted

of third degree assault because he admitted to acting intentionally, which proved he

acted with something more than criminal negligence. Mr. Jim did not object to these

arguments. The jury found Mr. Jim guilty of second degree assault. He appealed.

## ANALYSIS

The issue is whether the prosecutor's closing argument constituted misconduct

necessitating a new trial. Mr. Jim contends the prosecutor's argument improperly

blurred a significant distinction between requisite mental states as to the act and as to

the result, thus intentionally misleading the jury.

In order to show the prosecutor committed misconduct during closing argument,

Mr. Jim must prove the prosecutor's remarks were both improper and prejudicial. *State

v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Misstating the law constitutes an

improper remark. *Id.* at 373-74. Mr. Jim argues the prosecutor misstated the law when

3

arguing (1) Mr. Jim had admitted to intentionally striking Mr. Capetillo and had stipulated to the resulting substantial bodily harm, thus the elements of second degree assault were proven beyond a reasonable doubt and (2) Mr. Jim could not be convicted of third degree assault because he admitted to acting with intent, which proved he acted with a more serious mental state than criminal negligence. Assuming without deciding the prosecutor's remarks during closing argument were improper, Mr. Jim does not prevail because he cannot show prejudice.[1]

Regarding the prejudice prong, Mr. Jim argues the prosecutor's remarks prejudiced him by improperly creating a mandatory presumption that if the jury found he intentionally assaulted Mr. Capetillo, he necessarily inflicted substantial bodily harm. The State counters no prejudice resulted because sufficient evidence supports Mr. Jim's conviction, the prosecutor made these comments because the trial court erroneously instructed the jury on the lesser included offenses of third and fourth degree assault, and a jury is presumed to follow the instructions given.

Once an appellate court determines a prosecutor's statements were improper, it must then determine whether the defendant was prejudiced under one of two standards of review: (1) "[i]f the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of

---

[1] RCW 9A.36.021(1)(a) provides a person commits second degree assault if he "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm." Thus, second degree assault is defined by (1) the act of assault and (2) the result of substantial bodily harm. *State v. Kneed*, 140 Wn. App. 858, 866, 166 P.3d 1268 (2007). "[T]he mens rea of intentionally relates to the act (assault), while the mens rea of

4

affecting the jury's verdict"; or (2) if the defendant failed to object, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Allen*, 182 Wn.2d at 375 (quoting *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012)).

The second "heightened" standard of review applies here. Thus, Mr. Jim "must show that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict." *Emery*, 174 Wn.2d at 761 (internal quotation marks omitted). The prejudicial effect of a prosecutor's improper argument is analyzed in the context of the full trial. *State v. Swanson*, 181 Wn. App. 953, 964, 327 P.3d 67 (2014). Mr. Jim cannot show prejudice.

First, a curative instruction could have fixed the suggested argument problems. "[R]emarks are not per se incurable simply because they touch upon a defendant's constitutional rights." *Emery*, 174 Wn.2d at 763. If Mr. Jim had timely objected, the trial court could have properly explained the requirement of two different mental states for the crime of second degree assault.

Second, the record does not reveal the alleged improper statement of law influenced the jury during its deliberations. The single misstatement of law was not repeated in the State's rebuttal closing argument. The jury did not ask the court any

---

recklessly relates to the result (substantial bodily harm)." *Id.* The prosecutor's closing argument touched the line between the two required mental states.

5

questions after deliberations began. *See Allen*, 182 Wn.2d at 378-79 (where jury asked a question indicating the jury's confusion as to the proper standard to convict). And because Mr. Jim failed to object, there was no opportunity for the trial court to rule on the objection. *See State v. Davenport*, 100 Wn.2d 757, 764, 675 P.2d 1213 (1984) (finding a trial court's ruling overruling a proper objection "lent an air of legitimacy to what was otherwise improper argument").

Third, the jury instructions accurately stated the law. The instructions made clear that (1) only if the jury found intentionality as to the act of assault could it also find recklessness as to the act of assault, but (2) the jury could not, as a consequence, also find recklessness as to the infliction of substantial bodily harm. A jury is presumed to follow the instructions given, however this presumption may be overcome "where the record reflects that the jury considered an improper statement to be a proper statement of the law." *Allen*, 182 Wn.2d at 380. Moreover, while whether sufficient evidence exists to support a conviction is not the standard of review for a claim of prosecutorial misconduct, the State did produce sufficient circumstantial evidence to allow the jury to infer recklessness as to the resulting substantial bodily harm.[2]

---

[2] Such evidence includes: (1) while Mr. Jim was in earshot, Ms. Capetillo testified she yelled at Mr. Yazzie and mentioned Mr. Capetillo's health issues before Mr. Jim hit Mr. Capetillo; and (2) Mr. Jim's belief he punched harder than the average person. While Mr. Jim points to evidence, including conflicting testimony from both himself and Mr. Yazzie, tending to disprove recklessness as to the resulting substantial bodily harm, we do not reweigh conflicting testimony or determine witness credibility. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

6

No. 32546-6-III
*State v. Jim*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

7