## NOTICE: SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84366-4-I |
| Appellant, | |
| v. | DIVISION ONE |
| COREY JUSTIN THOMPSON, | ORDER GRANTING MOTION TO PUBLISH |
| Respondent. | |

Appellant, State of Washington, moved for publication of the opinion filed on August 28, 2023. Respondent, Corey Justin Thompson, filed an answer to the motion, stating that the respondent takes no position on the motion to publish. A panel of the court has considered the motion and has determined that the motion to publish should be granted.

Now, therefore, it is hereby

ORDERED that the motion to publish is granted.

_Díaz, J._

_Birk, J._                    _Bummer, J_

For the current opinion, go to https://www.lexisnexis.com/clientlawreports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84366-4-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| COREY JUSTIN THOMPSON, | |
| Respondent. | |

DÍAZ, J. — The State alleges that three 12-year-old girls playing in an apartment complex playground saw Corey Thompson "touching his privates while looking at them" from his own apartment. One of the girls vividly described Thompson's erect—but clothed—penis, and all three described him masturbating or touching himself over his clothing. The State charged Thompson with felony indecent exposure under RCW 9A.88.010, and Thompson twice moved to dismiss the information, arguing nudity is a required element of the crime. The trial court eventually granted the motion, finding that the law is unconstitutionally vague as applied to Thompson, who would not have known that his actions were prohibited. The State appeals. We reverse and vacate the trial court order dismissing the information, and remand the matter for further proceedings.

Citations and pincites are based on the Westlaw online version of the cited material.

No. 84366-4-I/2

## I.   FACTS

In 2019, Thompson lived in an apartment complex in Mount Vernon, which abutted an open-air central yard and playground.  Thompson's apartment had a sliding glass door with a direct view of the playground.  Three minors, T.F., H.F., and M.R. (all under 14 years old), played on the playground and could see inside Thompson's apartment.  At some point between May 1, 2019 and July 31, 2019, all three saw Thompson wearing gym shorts and a t-shirt, "touching his privates and looking at them."

Specifically, T.F. saw Thompson sitting in a chair in the doorway of the sliding glass door, "touching his privates."  T.F. described "seeing it but not seeing" Thompson's penis, which she said was "circular and long," though fully clothed. T.F., H.F., and M.R. all said Thompson was rubbing his penis in "stroking motions" with his hand over his clothing while watching them on the playground.

After the children reported Thompson's actions, the Mount Vernon Police investigated.  The State subsequently determined that a court had previously convicted Thompson of violating RCW 9A.88.010.  In January 2020, the State charged Thompson with one count of felony indecent exposure (second or subsequent offense) under RCW 9A.88.010(1) and (2)(c).

In February 2022, Thompson brought a motion to dismiss.[1]   Thompson

---

[1] This was Thompson's second motion to dismiss.  In August 2021, Thompson moved to dismiss the charges for the first time.  At oral argument, Thompson argued that, under State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986), there was insufficient evidence that he committed the crime of indecent exposure because the children saw "a fully clothed man with his hand outside of his clothing," adding that the "State is arguing that clothes is exposure.  The defense is just arguing that exposed is not.  That's it."  The first trial judge denied Thompson's

2

argued that RCW 9A.88.010 was unconstitutionally vague as applied to him, in violation of the Fourteenth Amendment to the federal constitution and article I, section 3 of our state's constitution. He contended that the statute did "not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition," insisting "the meaning of exposure means that it's open and that it's visible, that it's on display" and Thompson was fully clothed.

The court granted the motion, finding that on his "reading of the statute [and] of the cases [] there has to be some exposure of some sort." The court held that "the question under the statute is did an exposure occur . . . it doesn't appear that that happened."

The State timely appeals.

## II.    ANALYSIS

We conclude the statute is not unconstitutionally vague as applied to Thompson because his behavior (of allegedly masturbating in front of children while fully clothed) is an "obscene exposure" under RCW 9A.88.010, despite his lack of nudity.

### A.    Law

#### 1.    Unconstitutional Vagueness

Washington has long recognized the basic principle that a criminal statute

---

Knapstad motion, noting "there isn't any sort of definition . . . there has to be a line someplace, but the legislature has not indicated what that law is. Given the uncontested facts for the purposes of this motion, this could potentially meet that." Although Thompson brought this first motion under the Fourteenth Amendment as well, the briefing, argument and ruling all revolved around the Knapstad analysis. Thus, we will refer to this first motion as Thompson's Knapstad motion.

must give fair warning of the conduct that makes it a crime. State v. Galbreath, 69 Wn.2d 664, 667, 419 P.2d 800 (1966). That standard, i.e., fair warning, protects individuals from being held criminally accountable for conduct which a person of ordinary intelligence could not reasonably understand is prohibited. City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). "Accordingly, the test for whether the penal statute is sufficiently definite is common intelligence." Id. at 179.

Stated otherwise, a defendant challenging a statute as being unconstitutionally vague must show that the statute either (1) does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement.[2] State v. Peters, 17 Wn. App. 2d 522, 538, 486 P.3d 925, review denied, 198 Wn.2d 1014 (2021).

A statute can be challenged as being facially vague or vague as applied.[3] Id. "If the statute does not involve First Amendment rights, then the vagueness challenge is to be evaluated by examining the statute as applied under the particular facts of the case." State v. Watson, 160 Wn.2d 1, 6, 154 P.3d 909 (2007) (quoting State v. Coria, 120 Wn.2d 156, 163, 839 P.2d 890 (1992)). To evaluate a challenge to a statute for being vague as applied, we look at the actual conduct of the party challenging the statute, not to any hypothetical situation at the

---

[2] Because Thompson did not cross-appeal the trial court's decision to not reach the latter (whether the statute lent itself to arbitrary enforcement), we do not address or reach this prong of the vagueness analysis.

[3] At no point has Thompson challenged that the statute is vague on its face.

No. 84366-4-I/5

periphery of the rule's scope. Peters, 17 Wn. App. 2d at 538.

"'This is because while a statute may be vague or potentially vague as to some conduct, the statute may be constitutionally applied to one whose conduct clearly falls within the constitutional core of the statute.'" State v. Maciolek, 101 Wn.2d 259, 263, 676 P.2d 996 (1984) (internal quotations marks omitted) (quoting State v. Hood, 24 Wn. App. 155, 158, 600 P.2d 636 (1979)).

 "[A] statute meets constitutional requirements '[i]f persons of ordinary intelligence can understand what the ordinance proscribes, notwithstanding some possible areas of disagreement.'" Watson, 160 Wn.2d at 7 (alteration in original) (quoting Douglass, 115 Wn.2d at 179).  Even if there is a disagreement about the meaning of a statute, "'vagueness in the constitutional sense is not mere uncertainty.'" Id. (quoting Douglass, 115 Wn.2d at 179).  Thus, due process does not require impossible standards of linguistic certainty because "'[s]ome degree of vagueness is inherent in the use of our language.'" Peters, 17 Wn. App. 2d at 538 (quoting Smith, 130 Wn. App. 721, 726, 123 P.3d 896 (2005)).

Moreover, "[b]ecause of the inherent vagueness of language, citizens may need to utilize . . . court rulings to clarify the meaning of a statute." Watson, 160 Wn.2d at 8.  Such sources are considered "'presumptively available to all citizens.'" Id. (quoting Douglass, 115 Wn.2d at 180).

Finally, a statute is presumed to be constitutional, and the party challenging its validity must prove that it is unconstitutional beyond a reasonable doubt. Peters, 17 Wn. App. 2d at 538.  "The standard for finding a statute unconstitutionally vague is high . . . '[T]he presumption in favor of a law's

5

constitutionality should be overcome only in exceptional cases.'" Watson, 160 Wn.2d at 11 (quoting City of Seattle v. Eze, 111 Wn.2d 22, 28, 759 P.2d 366 (1988)); see also Island County v. State, 135 Wn.2d 141, 147, 955 P.2d 377 (1998) (this standard arises from the court's "deference" to the legislature).

2. RCW 9A.88.010(1) and Principles of its Interpretation

Here, the statute in question states:

A person is guilty of indecent exposure if he or she intentionally makes any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm. The act of breastfeeding or expressing breast milk is not indecent exposure.

RCW 9A.88.010(1).

"The meaning of a statute is a question of law we review de novo." State v. Brown, 194 Wn.2d 972, 975, 454 P.3d 870 (2019). We seek to ascertain and carry out the legislature's intent. State v. Barnes, 189 Wn.2d 492, 495, 403 P.3d 72 (2017). "An undefined term is 'given its plain and ordinary meaning unless a contrary legislative intent is indicated.'" Brown, 194 Wn.2d at 976 (quoting Ravenscroft v. Wash. Water Power Co., 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)). "If the statute is susceptible to more than one reasonable interpretation, it is ambiguous and the court 'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" Id. (quoting Christensen v. Ellsworth, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)). "In determining whether a statute conveys a plain meaning, 'that meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" Id. (quoting Dep't of

Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

B.    Discussion

Thompson urges this court to affirm the trial court because the phrase "open and obscene exposure of his or her person" in RCW 9A.88.010(1) does not definitively set out what conduct is proscribed—i.e., whether actual nudity is required to make an open and obscene exposure—which makes the statute unconstitutionally vague as applied to Thompson.[4]

In support of this argument, Thompson first offers the dictionary definition of the term "exposure," which is defined as a "condition of being presented to view or made known," "open to view," or "not shielded or protected." From this definition, and that of the remaining terms in the phrase "open and obscene exposure of his or her person," Thompson concludes that the plain and ordinary meaning of RCW 9A.88.010(1) requires "actual nudity" for him to have committed indecent

---

[4] Thompson's first argument in his briefing was that there was insufficient evidence as a matter of law that he violated RCW 9A.88.010 "because [he] never exposed his person." Admittedly this argument was a request to reverse the first trial judge's denial of his earlier Knapstad motion. Thompson further argued on appeal that, if this court affirmed on this ground, it would "thereby vitiate[e] the need to decide the standalone issue of vagueness." However, Thompson did not present this issue to the second trial judge and did not cross-appeal the denial of the Knapstad motion, which precludes its review on appeal. Amalg. Transit Union Loc. 587 v. State, 142 Wn.2d 183, 202, 11 P.3d 762, 27 P.3d 608 (2000). Thus, we decline to address the merits of this specific argument under RAP 2.4(a). Furthermore, at oral argument, counsel for Thompson conceded that we need not reach the Knapstad issue if we resolve the constitutional challenge first. Wash. Court of Appeals oral argument, State v. Thompson, No. 84366-4-I (July 14, 2023), at 16 min., 46 sec. through 17 min., 34 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023071111.

exposure.[5] Thus, because Thompson's genitalia remained covered by his shorts, according to Thompson, he "cannot" be, or could not have known he could be found, guilty of that crime.

In turn, to the extent that RCW 9A.88.010(1) permits prosecution for anything else but nudity, he contends that statute is unconstitutionally vague as applied to him. In other words, if he is prosecuted despite being fully clothed, Thompson would "necessarily have to guess at this language's meaning and differ as to its application to conclude that the statute penalizes clothed 'exposures' of genitalia."

Thompson's deconstruction of the phrase "open and obscene exposure of his or her person" fails for two major, initial reasons. First, the terms "nudity" or "nude" or "clothed" or "unclothed" (or any synonym thereof) do not appear anywhere in the statute. If the legislature wanted to "criminalize nudity," as Thompson claims, it certainly knew how. See McGinnis v. State, 152 Wn.2d 639, 645, 99 P.3d 1240 (2004) ("The legislature is presumed not to include unnecessary language when it enacts legislation.")

Second, our courts consistently have defined the phrase "obscene exposure," not by breaking down the definition into its constituent parts as

---

[5] Thompson also argues that, because "RCW 9A.88.010 explicitly exempts breast feeding and expressing breast milk from the definition of indecent exposure," this must mean nudity is required because "breast feeding and expressing breast milk both require nudity." This claim is factually inaccurate, as either activity can be concealed, and yet the legislature felt required to exclude these practices. As will be discussed below, the statute could have referred to "exposed" breast feeding/expressing but it did not. This conclusion too suggests that nudity is not the gravamen of the crime.

8

No. 84366-4-I/9

Thompson does, but by interpreting the phrase as a whole.

Namely, in Galbreath, the defendant was convicted of violating, and then challenged the constitutionality of, former RCW 9.79.080 (1955) for deliberately displaying his genitals to children under 15 years old.[6] Galbreath, 69 Wn.2d at 666. Our Supreme Court held that "the words 'indecent' and 'obscene' are common words, of common usage, and enjoy a commonly recognized meaning among people of common intelligence." Id. at 668. It went on to find that, "[c]ertainly, in the annals of the law *the phrase* 'indecent or obscene exposure of his person,' has, through usage, developed a traditional and well-settled meaning, which undoubtedly compares favorably to the meaning attributed thereto by the average layman." Id. at 668 (emphasis added). Specifically, "legal writers and scholars have long conceived *the phrase* [obscene exposure] to signify and relate to a *lascivious exhibition* of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others." Id. (emphasis added).

The phrase "obscene exposure," in other words, is a legal term of art; it is the "exhibition" of something customarily kept private, i.e., genitals, which are

---

[6] Former RCW 9.79.080 (1955) was the predecessor statute in effect at the time, which read "Every person who takes any indecent liberties with or on the person of any child under the age of fifteen years, or makes any indecent or *obscene exposure* of his person, or of the person of another, whether with or without his or her consent, shall be guilty of a felony . . . ." Former RCW 9.79.080(2) (1955) (emphasis added). At oral argument, counsel for Thompson conceded that Galbreath is still good law despite the fact it was interpreting this statute, which the legislature later significantly amended. Wash. Court of Appeals oral argument, supra, at 3 min., 44 sec., through 5 min., 21 sec. It is also worth noting that nowhere in Galbreath was the exposure described as "naked."

9

exhibited for lascivious reasons.

The next decade, around the same time as the renaming and recodification of this statute, this court defined the phrase "obscene exposure" consistent with Galbreath and flatly held that "[i]t is sufficient if the acts are such that the common sense of society would regard the specific act performed as indecent and improper." State v. Eisenshank, 10 Wn. App. 921, 924, 521 P.2d 239 (1974) (defining the phrase also as "the lascivious *exhibition* of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others") (emphasis added). Explaining what it meant by "sufficient," this court clarified that "the crime is *completed* when the inappropriate *exhibition* takes place in the presence of another."[7] Id. (emphasis added).

In short, our courts have defined the phrase "obscene exposure," not as nudity, but as a kind of wrongful exhibition. More specifically, the question is whether our common shared sense of societal decency would judge a given lascivious exhibition of a sexual organ as indecent or improper.

To dig into those terms further, "lascivious" is defined as "filled with or showing sexual desire." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/lascivious; Barnes, 189 Wn.2d at 496 (an undefined, nontechnical term may also be determined from a standard

---

[7] As in Galbreath, Eisenshank does not suggest, let alone mention, that nudity was an essential element of the crime there. Thus, it is inaccurate to suggest, as Thompson does, that the "case law . . . has always assumed that nudity is required to violate RCW 9A.88.010." That is ascribing an assumption to those cases that is just not present.

English dictionary).  "Exhibition" is defined as "to show or display outwardly." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/exhibition.  There is no per se requirement for nudity in the term "exhibition."  The key is if the person is "displaying" his genitalia in a certain way, i.e., sexually and contrary to our common sense of decency.

Here, the State alleges that Thompson publicly showed his clearly erect, though clothed, penis in a highly sexualized way, namely, masturbation.  We hold that our common sense of societal decency would judge the sexualized "display" and stroking of his erect genitalia as improper, and that those acts would be commonly understood as such by a person of ordinary intelligence.  Galbreath, 69 Wn.2d at 667; Eisenshank, 10 Wn. App. at 924.  "Particularly [does] this appear to be so [because] the exposure condemned refers to behavior in the presence of children of tender years."  Galbreath, 69 Wn.2d at 668.  These allegations also fall within the "core" of the statute for purposes of our vagueness analysis.  Maciolek, 101 Wn.2d at 263.  Thus, the alleged actions are not unconstitutionally vague as applied to Thompson.

In response, Thompson first contends the legislative history of RCW 9A.88.010 supports his assertion that the statute requires actual nudity.  However, it is unnecessary for us to review the legislative history in such detail because (a), as Thompson recognizes, through all the changes enacted over the decades, the essential phrase "obscene exposure" has been retained and not changed, and (b) our Supreme Court has examined the legislative history and intent of the term, and has never held that nudity is an essential element of the crime.  Galbreath, 69

11

No. 84366-4-I/12

Wn.2d at 668.

If anything, as Thompson noted, the legislature changed the title of the crime from "Public Indecency" to "Indecent Exposure" in response to a holding of this court, which (as Thompson urges us to do here) focused on the pure dictionary definition of the term "public," and held that the exposure of one's person had to be made in a public place. LAWS OF 1987, ch. 277, § 1(1) (codified as amended at RCW 9A.88.010(1)); State v. Sayler, 36 Wn. App. 230, 673 P.2d 870 (1983). This evinces the legislature's intent to focus the citizenry and the courts on more than just the location of the crime, including its "public nature" and focus on the type of behavior society would find improper. We decline Thompson's invitation to myopically focus on whether, strictly-speaking, nudity occurred.

Thompson further argues that two more recent cases posit a nudity requirement in the statute: State v. Vars and State v. Stewart. Neither, however, holds that nudity is a *requirement* for conviction under RCW 9A.88.010. State v. Vars, 157 Wn. App. 482, 237 P.3d 378 (2010), State v. Stewart, 12 Wn. App. 2d 236, 457 P.3d 1213 (2020).

In Vars, the defendant was seen walking around residential neighborhoods naked, but no particular witness could testify they saw his genitals. Vars, 157 Wn. App. at 489. Thompson makes much of the fact that, unlike in Galbreath and Eisenshank, this court mentioned the defendant's actual nudity. However, in Vars, this court was addressing the narrow issue of whether a witness must observe naked genitalia as an element of the crime of indecent exposure. Id. at 489. This court found the witness did not need to observe the actual genitalia when

12

No. 84366-4-I/13

circumstantial evidence was sufficient to infer the defendant's genitalia was likely "exposed."  Id. at 486.

The question here is different: whether a defendant's genitals *must be nude*. Vars did not need to reach or define the phrase "any open and obscene exposure of his or her person."  Vars simply returned to the understanding of obscenity first announced in Galbreath, when finding that "the gravamen of the crime is an intentional and 'obscene exposure' in the presence of another that offends society's sense of 'instinctive modesty, human decency, and common propriety.'" Id. at 491 (quoting Galbreath, 69 Wn.3d at 668).  Vars does not disturb our more holistic understanding of the phrase "obscene exposure" above.[8]

The second case Thompson relies on is State v. Stewart, where this court examined again whether there was substantial evidence of indecent exposure. Stewart, 12 Wn. App. 2d at 23.  In Stewart, the defendant was seen crouching in an alleyway (from behind) with his hand moving "rapidly" in front of his pants.  Id. at 240-41.  Witness testimony was unclear for whether his pants were on.  Id. at 240.  The witness did not see his genitalia.  Id. at 238.  The court concluded, despite that fact, there was substantial evidence he was indecently exposing himself in public "outside his pants," through the totality of the evidence.  Id. at 242. As in Vars, however, this court was not preoccupied with the question whether, and did not find as a matter of law, masturbation must occur on the outside of the

---

[8] Vars also occurred in a different procedural posture where the question was whether there was sufficient evidence of indecent exposure, and not whether indecent exposure occurred as a matter of law with or without nudity.  Vars, 157 Wn. App. at 489.

13

pants to find a defendant guilty of indecent exposure.

Finally, Thompson stands up a field full of strawmen, arguing that, under this understanding of the phrase "obscene exposure," "any time the outline of one's genitalia can be seen through clothing, a crime occurs." He contends that men in "wrestling singlets," women in "skintight compression leggings," and even an "involuntary erection while sleeping" could be actionable under this interpretation of the term.

We conclude that this is not a serious argument. As a matter of law, indecent exposure requires, not only exhibition of the genitals, but obscenity, i.e., lascivious behavior judged as improper by society. It is the exhibition *and the behavior* which are the gravamen of the crime. Vars, 157 Wn. App. 491. There would be no basis to prosecute the athletic, artistic, humorous, or celebratory display of the body, which in most contexts "common decency" requires a person not to display, unless it would also be deemed lascivious (i.e., filled with sexual desire) and improper by the common person.

Conversely, under Thompson's logic, a barely veiled erect penis used in the most sexualized and unwelcome manner imaginable would not be considered obscene because the genitalia is at least not naked. Our interpretation of the statute does not allow such absurd results. Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002) (this court "must also avoid constructions that yield unlikely, absurd or strained consequences.").

### III.    CONCLUSION

We conclude the trial court erred in dismissing the charge at issue as

14

unconstitutionally vague as applied to Thompson. We, thus, reverse and vacate the order dismissing the information, and remand the matter for further proceedings.

_Díaz, J._

WE CONCUR:

_Birk, J._          _Brennan, J._